UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
NORMA KNOPF and MICHAEL KNOPF,          :          17cv5833(DLC)
                                        :
                 Plaintiffs,            :          OPINION AND ORDER
                                        :
        -v-                             :
                                        :
FRANK M. ESPOSITO, DORSEY & WHITNEY     :
LLP, NATHANIEL H. AKERMAN, EDWARD S.    :
FELDMAN, and MICHAEL HAYDEN SANFORD,    :
                                        :
                 Defendants.            :
                                        :
--------------------------------------- X

APPEARANCES

For Norma Knopf and Michael Knopf:
Eric W. Berry
Berry Law PLLC
745 Fifth Avenue, 5th Floor
New York, New York 10151

Gary Greenberg
Gary Greenberg, Esq.
666 Fifth Avenue, 27th Floor
New York, New York 10103

For Frank M. Esposito:
Frank Esposito
275 Madison Avenue, 14th Floor
New York, New York 10016

For Dorsey & Whitney LLP and Nathaniel H. Akerman:
Nathaniel H. Akerman
Amanda M. Prentice
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York 10019

Peter M. Lancaster
Dorsey & Whitney LLP
50 South Sixth Street
Suite 1500

Minneapolis, MN 55402

For Edward S. Feldman:
Edward S. Feldman
570 Grand Avenue
Englewood, New Jersey 07631

For Michael Hayden Sanford:
Michael Hayden Sanford
Post Office Box 1328
Montauk, New York 11954

DENISE COTE, District Judge:

This is the third action before this Court arising out of a loan repayment dispute involving the plaintiffs -- Norma and Michael Knopf (the "Knopfs") -- and defendant Michael Sanford ("Sanford") and his company Pursuit Holdings, LLC ("Pursuit"). In this action, the Knopfs allege that Sanford conspired in violation of 42 U.S.C. § 1983 with three attorney defendants -- Frank Esposito ("Esposito"), Nathaniel Akerman ("Akerman"), Akerman's law firm Dorsey & Whitney LLP ("Dorsey"), and Edward Feldman ("Feldman") -- and others to obtain what the Knopfs characterize as an ex parte advisory opinion ("Advisory Opinion") from a court attorney ("Court Attorney") employed by the New York State Appellate Division, First Judicial Department ("Appellate Division"). The Court Attorney is Esposito's wife. The Knopfs assert that using the illegally obtained Advisory Opinion, Sanford and Pursuit sold real estate without using the proceeds of the sale to repay the Knopfs. The Knopfs also assert claims for fraud and deceit, fraudulent conveyance, and

violation of New York Judiciary Law § 487 arising out of these events. The defendants each move to dismiss the first amended complaint ("FAC"). For the following reasons, the defendants' motions are granted.

## Background

The history of this litigation is described in several prior Opinions, with which familiarity is assumed. See Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC), 2017 WL 1449511 (S.D.N.Y. Apr. 21, 2017); Knopf v. Phillips, 16cv6601(DLC), 2016 WL 7192102 (S.D.N.Y. Dec. 12, 2016); Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC), 2016 WL 1166368 (S.D.N.Y. Mar. 22, 2016); Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC), 2015 WL 6116926 (S.D.N.Y. Oct. 16, 2015). This Opinion summarizes only those facts relevant to the instant motions.

The following facts are taken from the FAC, documents incorporated into the FAC by reference, and proceedings in the State Court Action described below and related litigation. Although the FAC's claims arise from activity in the State Court Action and its impact on the sale of PHC, the FAC does not provide a complete description of the decisions rendered in the State Court Action. Those decisions, which are recited below, are both integral to the FAC's claims and matters of which this Court may take judicial notice.

In 2006, the Knopfs extended two real estate loans to Pursuit: one for $1,690,860 to finance the purchase of a residence located at 44 East 67th Street ("PHC"), and another for $3,250,000, which Pursuit used to purchase three condominium units located at 10 Bedford Street (the "Townhouse," collectively with PHC, the "Properties"). Pursuit did not grant the Knopfs mortgages on the Properties as promised or repay either loan.

In 2009, the Knopfs sued Sanford and Pursuit in the Supreme Court of the State of New York, New York County, for repayment and sought the imposition of a constructive trust based on Pursuit's failure to grant a mortgage (the "State Court Action"). At the outset of the litigation, the Knopfs filed notices of pendency against the Properties. On October 15, 2013, the Appellate Division extended the notices of pendency for a second three-year term.

On December 23, 2013, Sanford, on behalf of Pursuit, agreed to sell PHC to Michael Phillips ("Phillips"). Phillips' agreement to purchase PHC was conditioned on the cancellation of the notices of pendency.

On December 11, 2014, the Appellate Division, reversing, granted summary judgment in favor of the Knopfs on their loan claims. Knopf v. Sanford, 1 N.Y.S.3d 18 (1st Dept. 2014). The

Appellate Division's decision, however, did not assess damages. As a result, the Knopfs did not obtain a final judgment.

## A. Cancellation of the Notices of Pendency

On December 23, 2014, New York County Supreme Court Justice Milton Tingling issued an order cancelling the notices of pendency. On July 2, 2015, the Appellate Division affirmed the cancellation. On July 24, 2015, the Knopfs moved in the Appellate Division for a preliminary injunction against the sale or encumbrance of PHC.

On October 22, 2015, the Knopfs filed a motion in the Appellate Division for reconsideration of a substituted October 6 decision affirming cancellation of the notices of pendency.[1] In connection with this motion, the Knopfs requested an interim stay against the sale of PHC. An Appellate Division Justice issued an order that permitted the sale of PHC but required the proceeds to be placed in escrow ("October 2015 Order"). The October 2015 Order reads in relevant part: "1 bedroom property may be sold -- proceeds to be placed in escrow pending further court order." Sanford refused to proceed with the sale if he was required to escrow the proceeds.

---

[1] The Appellate Division's July 2, 2015 decision was vacated and substituted on October 6, 2015. See Knopf v. Sanford, 17 N.Y.S.3d 674 (1st Dept. 2015); Knopf v. Sanford, 13 N.Y.S.3d 365 (1st Dept. 2015). The October 6, 2015 decision again affirmed the cancellation of the notices of pendency.

On November 12, 2015, the Appellate Division issued an order rejecting the Knopfs' motion for a preliminary injunction restraining the sale of PHC ("November 2015 Order"). The November 2015 Order reads, in pertinent part:

> [P]laintiffs-appellants having moved for prejudgment attachment pursuant to CPLR 6201 or, in the alternative, for a preliminary injunction enjoining defendants from transferring, mortgaging, or otherwise impairing the value of the subject properties pending hearing and determination of the aforesaid appeal,
>
> Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, it is
>
> Ordered that the motion is denied.

On November 20, 2015, Sanford and Pursuit cross-moved to vacate the October 2015 Order. On December 29, 2015, the Appellate Division denied Pursuit and Sanford's motion to vacate the October 2015 Order ("December 2015 Order"). The December 2015 Order reads, in relevant part:

> [D]efendants-respondents having cross-moved for vacatur of a certain interim order by a Justice of this Court dated October 22, 2015 [M-5942],
>
> . . .
>
> The cross motion for vacatur of the interim order dated October 22, 2015 is denied (M-5942).

## B. The January 12, 2016 Telephone Call with the Court Attorney

During this period, MH Sanford & Co., LLC ("MH Sanford & Co.") an entity apparently owned and controlled by Sanford, retained Esposito. Knowing that Esposito's wife was an attorney

working at the Appellate Division, Sanford gave Esposito a copy
of the December 2015 Order.  Esposito explained to Sanford that
his wife would opine that the October 2015 Order -- which had
required the sale proceeds to be escrowed "pending further court
order" -- "was no longer in effect."

On January 11, 2016, MH Sanford & Co. and Esposito
Partners, PLLC, entered into a written agreement.  The FAC
refers to that agreement and it is incorporated here by
reference.  Under the agreement, Esposito agreed to act as
general counsel for MH Sanford & Co. and focus on its "corporate
vision, business plans and strategic initiatives" as well as to
manage outside counsel "in relation to any current and
prospective litigations."  Esposito charged MH Sanford & Co. "a
project based, non-refundable fee of $55,000 for the six month
term of [the] agreement" in return for these services.  Esposito
agreed to wait to be paid until Sanford was in a position to
"liquidate" assets.

Around the same time, Sanford gave two other attorneys,
Akerman and Feldman, copies of the state court orders.  Akerman
is a litigator who had represented Sanford briefly in connection
with related litigation filed by the Knopfs against a law firm
that once represented Sanford and Pursuit in the State Court
Action.  Feldman is a real estate attorney who had been retained

by Pursuit in 2013 to assist in the sale of PHC.[2]  Sanford

instructed Akerman to contact the Appellate Division with

Feldman to obtain a clarification of the December 2015 Order

because that Order was preventing Phillips from getting clear

title.  On January 12, Akerman told Feldman that he knew that

the restraints on the sale had been "dissolved as a matter of

law" and that they would learn as much when they called the

Appellate Division.

Akerman and Feldman called the Appellate Division on

January 12, 2016 and requested to speak to a "clerk" for the

Court.[3]  They were transferred to an Appellate Division employee

who held the title of either Deputy Chief Appellate Court

Attorney or Principal Appellate Court Attorney (the "Court

Attorney," as described above).  The Court Attorney also held

the title of the Director of the Pre-Argument Conference Program

a/k/a Special Master's Program, a mediation service offered by

the Appellate Division.  The Court Attorney is Esposito's wife.

There is no allegation, however, that either Akerman or Feldman

were aware that the Court Attorney was married to an attorney

representing a Sanford entity.  The FAC does not allege that the

---

[2]  This description was given to the Court at an October 13, 2017
conference and is undisputed.

[3]  The FAC alleges that Akerman attempted to reach a clerk and
assumed that he was speaking to a clerk on January 12.

Court Attorney used the name Esposito in her employment or identified herself to Akerman and Feldman by the name Esposito.

During the telephone call, Akerman and Feldman identified themselves as Sanford's attorneys. According to Akerman and Feldman, the Court Attorney told them that the November 2015 Order "had terminated the effect" of the October 2015 Order.[4] The Court Attorney further stated that "there were no longer any restrictions" regarding the sale of PHC. Akerman did not need to review the history of the litigation with the Court Attorney because she was very familiar with the case. Counsel for the Knopfs did not participate in the call.

After the call, Feldman wrote a memorandum describing the conversation. The FAC refers to that memorandum and it is incorporated here by reference. It states:

> On January 12, 2016 at 10:45AM I had a conference call with Nick Ackerman [sic] and [name of the Court Attorney] of the Appellate Division. She confirmed the following:
>
> 1. The October 22, 2015 Interim Order with restraints was only in effect until motion decided.
>
> 2. Once full panel decided motion and entered the November 12, 2015 Order denying the restraints, all restraints were vacated.

---

[4] The FAC also alleges that the Court Attorney told Akerman and Feldman that the December 2015 Order terminated the effect of the October 2015 Order and that the December 29, 2015 motion was denied "because it was moot." The FAC further alleges that Esposito's wife had not been given a copy of, and did not know the content of, the October 2015 Order at the time of the call.

> There was no need for the motion to remove interim
> restraints as they were already gone.  The motion was
> denied as a matter of law as there were no restraints
> to vacate and, thus the motion requested relief that
> could not be granted.

Feldman forwarded the memorandum to Phillips' lawyer.

### C. The Sale of PHC

The Court Attorney's views satisfied Phillips and his title company that the October 2015 Order was no longer in effect.  On February 1, 2016, Phillips and Pursuit closed on the sale of PHC.  PHC was sold by Pursuit for $3 million.  None of the proceeds of the sale were placed in escrow.

On February 4, 2016, Dechert LLP ("Dechert") accepted $500,000 out of the proceeds of the PHC sale as an initial retainer to represent Sanford and Pursuit in the State Court Action.  Three weeks earlier, on January 14, 2016, the Court Attorney had inquired of Dechert whether it would be interested in serving as their counsel.

On February 8, 2016, Judicial Hearing Officer Ira Gammerman issued a report finding that the Knopfs were entitled to damages against Sanford in the State Court Action in the amount of $10,937,850, and that Pursuit was jointly liable for $8,336,488 of that amount.  The report has not yet been confirmed.

After learning of the sale of PHC and the failure to escrow the proceeds, on February 25, 2016, the Knopfs moved to disgorge

the $500,000 retainer given to Dechert using proceeds from the
sale of PHC and to place it into an escrow account.  They moved
as well for contempt sanctions.  That day, the Knopfs also
obtained an interim order from an Appellate Division Justice
requiring any proceeds remaining from the sale to be placed in
escrow ("February 2016 Order").  The February 2016 Order states:

> Money remaining as of today at 3:45 pm from sale of
> 1-bedroom apartment shall be placed in escrow as had
> been directed by Justice Sweeny in his 10/22/15
> interim order, vacatur of which was denied by this
> Court's 12/29/2015 Order (M-5459, M-5942) pending
> hearing and determination of this motion by full
> panel.
>
> Expedite motion & decision.
>
> Pending hearing by full panel, remaining money shall
> be escrowed with JP Morgan Chase or similar commercial
> Bank in New York City by 2/29 -- close of business.[5]

On March 24, 2016, the Appellate Division issued a preliminary
injunction against any further dissipation of the real estate
assets that Pursuit had acquired with loans from the Knopfs
("March 2016 Order").  <u>Knopf v. Sanford</u>, 26 N.Y.S.3d 866 (1st
Dept. 2016).

Pursuit and Sanford have since paid $436,227.32 of the sale
proceeds into an escrow account.  Pursuit, Sanford, and Dechert
opposed the Knopfs' motion for disgorgement and contempt,
arguing that Akerman and Feldman had provided Sanford with legal
memoranda on January 12, 2016 opining that the October 2015

---

[5]  The February 2016 Order is handwritten and illegible in parts.

Order was no longer in effect.  In affirmations prepared in opposition to the motion, Akerman and Feldman each explained that an unidentified court attorney employed by the Appellate Division advised them in a conference call on January 12 that the October 2015 Order was no longer in effect.

On June 16, 2016, the Appellate Division denied the Knopfs' motion for contempt and for disgorgement of Dechert's $500,000 retainer.  Within hours, the Appellate Division issued a revised order that included an explanation of the denial ("Revised June 2016 Order").  The Revised June 2016 Order provides in relevant part:

> Plaintiffs-appellants seek an order of contempt against defendants and their counsel for allegedly violating a temporary restraining order issued by a single justice of this Court on October 22, 2015 (TRO);
>
> . . .
>
> The motion for contempt is denied because the TRO was vacated once plaintiffs' prior motion for a preliminary injunction was denied (People v Asiatic Petroleum, 45 AD2d 835, 836 [1st Dept. 1974]).[6]

---

[6]  In June 2017, the Knopfs, Sanford, Pursuit, Dechert, and other related entities entered into a consent order in the State Court Action in which the parties agreed that "[n]o party hereto shall further contend that any other party hereto has heretofore acted in contempt of any court order in connection with this action." The consent order was submitted in connection with related litigation before this Court concerning Pursuit's sale of PHC to Phillips.

The FAC alleges that the Revised June 2016 Order's reference to the denial of the Knopfs' prior motion for a preliminary injunction is a reference to the November 2015 Order. The FAC notes that the reasons given in the Revised June 2016 Order were "identical" to the reasoning that the Court Attorney provided to Akerman and Feldman on January 12, and which had been recited in the Feldman memorandum.[7]

On June 21, 2017, the Knopfs learned that the Court Attorney was Esposito's wife. The Knopfs filed this action on August 2, 2017.[8] Esposito moved to dismiss the complaint on August 12. On August 15, the Court ordered the Knopfs to file any amended complaint by September 2 and advised that it is unlikely that they will have a further opportunity to amend. The Knopfs filed the FAC on September 2. Between September 7 and October 16, each of the defendants moved to dismiss the FAC. The motions to dismiss were fully submitted by November 17.

## Discussion

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint

---

[7] The Knopfs' motion for reargument and vacatur of the Revised June 2016 Order was denied on November 2, 2017.

[8] On July 10, 2017, the Knopfs filed a substantially similar complaint in the United States District Court for the Eastern District of New York. The case was voluntarily dismissed without prejudice on the Knopfs' motion on July 28, 2017.

as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). In deciding a motion to dismiss, a court considers "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted). The court also considers "documents upon which the complaint relies and which are integral to the complaint." Subaru Distrib. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). A court may properly take judicial notice of "relevant matters of public record," including related legal proceedings in other courts. Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012); see Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)("Courts routinely take judicial notice of documents filed in other courts to establish the fact of such litigation and related filings."); Fed. R. Evid. 201(b).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Parkcentral
Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208
(2d Cir. 2014) (citation omitted).

I.  **Section 1983 Conspiracy**

The Knopfs allege that Sanford and the attorney defendants
conspired with Esposito's wife to violate their Fourteenth
Amendment due process rights by depriving them of their property
interests in PHC and the proceeds of its sale without notice and
an opportunity to be heard.  This allegation arises from the
telephone conversation Akerman and Feldman had on January 12,
2016 with the Court Attorney, who is an employee of the
Appellate Division and also Esposito's wife.  According to the
Knopfs, "a due process violation occurred because, but for the
ex parte nature of the call in which the advisory opinion was
rendered the Knopfs would likely have been able to require that
the [entirety of the proceeds of the sale] be paid into escrow."
They also assert that "as a matter of law, the wrongful
deprivation of an opportunity to seek injunctive relief or other
pre-deprivation remedy is a due process violation."  Finally,
they assert a violation of their substantive due process rights,
specifically, that the defendants "acted with evil motive and
with intentional, callous and/or reckless indifference to the
Knopfs' constitutional rights."

To state a § 1983 conspiracy claim, a plaintiff must allege
(1) an agreement between two or more state actors, or "a state
actor and a private party; (2) to act in concert to inflict an
unconstitutional injury; and (3) an overt act done in
furtherance of that goal causing damages." Ciambriello v.
County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). When the
object of the § 1983 conspiracy is a violation of the
plaintiff's procedural due process rights, a plaintiff must
allege that he possesses a liberty or property interest
protected by the Constitution or federal statutes and that he
was deprived of that liberty or property interest without due
process. Id. at 313. With respect to a substantive due process
claim brought under § 1983, a plaintiff must allege that the
action at issue was "so egregious, so outrageous, that it may
fairly be said to shock the contemporary conscience." Okin v.
Village of Cornwall-On-Hudson Police Dept., 577 F.3d 415, 431
(2d Cir. 2009) (citation omitted). State action is an essential
prerequisite to a § 1983 conspiracy claim, Grogan v. Blooming
Grove Volunteer Ambulance Corps, 768 F.3d 259, 263 (2d Cir.
2014), and a § 1983 conspiracy claim "will stand only insofar as
the plaintiff can prove the sine qua non of a § 1983 action: the
violation of a federal right." Singer v. Fulton Cty. Sheriff,
63 F.3d 110, 119 (2d Cir. 1995).

For at least two reasons, the Knopfs fail to adequately plead a § 1983 conspiracy claim.[9] First, the gravamen of the alleged harm stems not from any conspiracy but from orders duly issued in 2015 by the Appellate Division. The January 12, 2016 conversation at the center of the Knopfs' claim concerned orders issued by the Appellate Division in the latter half of 2015. To the extent the Knopfs were unhappy with any of those orders -- in particular, the November 2015 Order rejecting the Knopfs' efforts to enjoin the sale of PHC -- they were free to take any further steps that state court procedures allowed.

This analysis is confirmed by the Revised June 2016 Order, which denied the Knopfs' motion seeking disgorgement and an order of contempt on the theory that the PHC sale had violated the temporary restraining order ("TRO") issued through the October 2015 Order. As the Revised June 2016 Order found, that TRO had been vacated "once plaintiffs' prior motion for a preliminary injunction was denied" and the FAC alleges that this is a reference to the November 2015 Order.

Thus, the harm that the Knopfs assert that they experienced from the sale of PHC is solely attributable to orders issued by

---

[9] Esposito argues that the Court lacks jurisdiction over the Knopfs' claims under the Rooker-Feldman doctrine or under the doctrine of collateral estoppel -- i.e., issue preclusion. For substantially the same reasons discussed in the Court's December 12 Opinion and Order in this case, these arguments fail. Knopf v. Phillips, 2016 WL 7192102, at *6-7.

judges of the New York State courts in 2015.  Those orders were
issued weeks before the conversation with the Court Attorney
that is central to this § 1983 claim.  If the Knopfs were or are
unhappy with orders issued by New York State courts, then the
New York State court system provides them with ample avenues of
redress through appeal or additional motion practice.  See New
York State Nat. Org. for Women v. Pataki, 261 F.3d 156, 169 (2d
Cir. 2001) ("[A] procedural due process violation cannot have
occurred when the governmental actor provides apparently
adequate procedural remedies and the plaintiff has not availed
himself of those remedies.")(citation omitted).  No federal
procedural due process claim lies in such circumstances.

Second, there is no plausible claim of any conspiratorial
agreement in connection with the January 12, 2016 conversation.
There is no allegation that Akerman or Feldman knew that the
Court Attorney was married to another attorney who represented a
Sanford company, or that they knew her at all.  Nor does the FAC
allege that Sanford or anyone associated with him instructed
Akerman and Feldman to contact a specific person -- by name or
title -- who worked at the Appellate Division.  There is also no
allegation that the Court Attorney or any other alleged
conspirator was in a position to cause the telephone call to be
routed to the Court Attorney.  As described in the FAC, Akerman
requested to speak with a "clerk" and Akerman and Feldman "were

transferred" to the Court Attorney, who happened to be

Esposito's wife.  Under these circumstances, the Knopfs fail

plausibly to plead the existence of an agreement among the

defendants and the Court Attorney in connection with the January

12, 2016 telephone call.[10]  The coincidence that the Court

Attorney who responded to the Akerman and Feldman inquiry was

also -- unbeknownst to Akerman and Feldman -- related to another

attorney retained by Sanford to represent one of his companies

is insufficient to state a claim of conspiracy with this state

actor.

    The Knopfs argue that in "hub-and-spoke" conspiracies it is

not necessary for each member of the conspiracy to know the

identities of each co-conspirator so long as each conspirator

was aware of the conspiracy's general nature and goal.  The

knowing and intentional participation of a state actor in the

conspiracy, however, is essential to the pleading of a § 1983

conspiracy claim.  There is no adequate pleading that Esposito's

wife was a member of any conspiracy on January 12, 2016 when she

answered a transferred call.  As significantly, at no point do

---

[10]  The Knopfs also allege that, prior to calling the Appellate
Division, Akerman indicated to Feldman that he "already knew"
that they would be told that the restraints had been dissolved
as a matter of law.  This allegation does not suggest Akerman's
involvement in any conspiracy.  The more natural inference is
that Akerman had already studied the relevant state court orders
and formed an independent judgment as to their effect.

the Knopfs allege that Akerman and Feldman were aware of any plan to improperly obtain information from the Court Attorney.

The Knopfs also emphasize tension in the wording of various state court orders. Such tension may not be surprising given the volume and pace of motion practice. This tension does not alter the fundamental holding, however, that orders issued by the Appellate Division in 2015 removed all restraints on the sale of PHC. Underscoring this reading of those 2015 orders, the FAC has not identified any instance in which any party has been found in contempt of a state court order for proceeding with that sale and not placing the proceeds in escrow on the day of the sale, despite the Knopfs' vigorous efforts to obtain such a ruling.

For these same reasons, to the extent that the FAC seeks to plead a substantive due process violation, that effort fails. The Knopfs' § 1983 claim is dismissed.

## II. Remaining State Law Claims

The remainder of the Knopfs' claims arises under state law. Although a federal court has supplemental jurisdiction over these claims, it may, in its discretion, decline to exercise such jurisdiction where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In general, when all of a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.

Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727 (2d Cir. 2013); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004). Because the Knopfs' federal claim is dismissed, the Court declines to exercise supplemental jurisdiction over their state law claims.

## Conclusion

The defendants' September 7, October 13, and October 16 motions to dismiss are granted. The sole federal claim is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the state law claims and they are dismissed without prejudice to refiling in state court. The Clerk of Court shall close the case.


Dated:     New York, New York
           December 7, 2017

                          _____
                                 DENISE COTE
                          United States District Judge