Nathaniel H. Akerman
Amanda Prentice
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Defendants DORSEY & WHITNEY LLP and NATHANIEL H. AKERMAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

| | |
|---|---|
| NORMA KNOPF and MICHAEL KNOPF<br><br>       Plaintiffs,<br><br>-v-<br><br>FRANK M. ESPOSITO, DORSEY & WHITNEY LLP, NATHANIEL H. AKERMAN, EDWARD S. FELDMAN and MICHAEL HAYDEN SANFORD<br><br>       Defendants. | 17-CV-05833 (DLC) (SN)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DORSEY & WHITNEY LLP AND NATHANIEL H. AKERMAN'S MOTION FOR ATTORNEYS' FEES** |

------------------------------------------------------------ X

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...............................................................................1

II. SUMMARY OF RELEVANT FACTS .....................................................................2

    A. STATEMENT OF FACTS ............................................................................2

        1. Plaintiffs' Stated Reasons For Filing the Action .........................2

        2. Attorney's Fees Incurred by Dorsey in Defense of this Action....................6

III. ARGUMENT..............................................................................................................8

    A. LEGAL STANDARD....................................................................................8

    B. THE ACTION WAS FRIVOLOUS, UNREASONABLE, AND LACKED FOUNDATION. ...................................................................9

    C. PLAINTIFFS' CLAIMS LACKED A GOOD FAITH BASIS AND WERE BROUGHT TO HARASS DEFENDANTS. .............................................10

    D. THE DORSEY DEFENDANTS' FEES ARE REASONABLE AND SHOULD BE AWARDED..................................................................11

IV. CONCLUSION........................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 60 East 80th Street Equities*,
  218 F.3d 109 (2d Cir. 2000) ..........8

*Abeyta v. City of N.Y.*,
  588 F. App'x 24 (2d Cir. 2014) ..........8

*Carter v. Incorporated Village of Ocean Beach*,
  759 F.3d 159 (2d Cir. 2014) ..........8

*Fox v. Vice*,
  131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011) ..........8

*Gen. Camera Corp. v. Urban Dev. Corp.*,
  734 F.2d 468 (2d Cir. 1984) ..........8

*Gust, Inc. v. AlphaCap Ventures, LLC*,
  226 F. Supp. 3d 232 (S.D.N.Y. 2016) (Cote, J.) ..........9

*Harbulak v. County of Suffolk*,
  654 F.2d 194 (2d Cir. 1981) ..........8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..........9

*Hernandez v. Berlin Newington Assocs., LLC*,
  699 F. App'x 96 (2d Cir. 2017) ..........9

*Knopf v. Meister Seelig & Fein, LLP*,
  No. 15-cv-5090 (DLC), 2015 U.S. Dist. LEXIS 141227 (S.D.N.Y. Oct. 16, 2015) ..........11

*Knopf v. Meister, Seelig & Fein, LLP*,
  No. 15-cv-5090 (DLC), 2016 U.S. Dist. LEXIS 37079 (S.D.N.Y. Mar. 22, 2016) ..........11

*Malkan v. Matua*,
  699 F. App'x 81 (2d Cir. 2017) ..........9

*Panetta v. Crowley*,
  460 F.3d 388 (2d Cir. 2006) ..........8

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) ..........9

**Statutes**

28 U.S.C. §1391..............................................................................................................3

28 U.S.C. § 1927....................................................................................................*passim*

42 U.S.C. § 1983..................................................................................................1, 4, 8, 9

42 U.S.C. §1988(b).........................................................................................................1, 8

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................................................4

Fed. R. Civ. P.41(a)(1)(A)(i) ...........................................................................................4

Defendants Dorsey & Whitney LLP and Dorsey partner Nathaniel H. Akerman (together the "Dorsey Defendants") respectfully move this Court for an award of attorneys' fees in connection with the dismissal of the amended complaint [Dkt. 12] granted on December 7, 2017 [Dkt. 80], pursuant to 42 U.S.C. §1988(b) and 28 U.S.C. § 1927, as follows:

## I. PRELIMINARY STATEMENT

Plaintiffs Norma and Michael Knopf have made a practice of filing claims against individuals and entities who performed work for Defendant Michael Hayden Sanford (or entities controlled by him) in connection with the sale of a penthouse on East 67th Street in Manhattan (the "Property"). Plaintiffs' most recent effort (their third before this Court) are their claims brought against a group including three lawyers and a law firm, including the Dorsey Defendants, for an alleged conspiracy with a New York First Department Appellate Division court attorney pursuant to 42 U.S.C. § 1983, along with various New York state claims. Plaintiffs have claimed that they were deprived their due process rights in encumbering the Property. This Court recognized that the claim was meritless, dismissed the § 1983 action with prejudice, declined to exert jurisdiction over the state law claims and accordingly dismissed them without prejudice, on December 7, 2017. [Dkt. 80]

Several statements establish that Plaintiffs and their counsel threatened Mr. Sanford to persuade him to settle with them by implying that they will continue to find ways to assert claims against Sanford and those connected to him, including his attorneys. The statements show Plaintiffs' bad faith in filing this latest action. Because the action was frivolous and was brought in bad faith, the Dorsey Defendants respectfully request that their motion for attorneys' fees and costs be granted under both 42 U.S.C. §1988(b) and 28 U.S.C. §1927.

1

## II. SUMMARY OF RELEVANT FACTS

### A. STATEMENT OF FACTS

#### 1. Plaintiffs' Stated Reasons For Filing the Action

A full statement of facts, with documents supporting those facts, is set forth in the accompanying Declaration of Nathaniel H. Akerman, dated December 26, 2017 ("Akerman Dec."). On June 30, 2017, Plaintiffs' counsel emailed a threat to file this lawsuit if Defendant Michael Sanford did not settle the dispute between them, stating, "Figure out a way to end it now . . . You want to make me prove I am serious?" Akerman Dec., ¶ 5, Ex. D. By that time, ample evidence provided notice to Plaintiffs' counsel that his conspiracy theory was baseless. Rather than properly seeking redress for his damages in an ongoing state law action regarding the Property, Plaintiffs' counsel Eric Berry made clear that the lawsuit giving rise to this motion was simply designed "to hurt [Sanford] and others." *Id.*; *see also* [Dkt. 80], at 17. Mr. Berry referred to this lawsuit as "[a] scholar's dream on the absolute immunity afforded non-judicial court employees who wrongly assume a judicial function" and referred to that speculative theory as "a lawyer's law-orgasm." Akerman Dec., ¶ 5; Ex. D.

Evidence that Plaintiffs knew that this lawsuit, premised on an alleged violation of a temporary restraining order, was frivolous before it was filed includes a June 16, 2016 Order of the First Department denying the Plaintiffs' motion for contempt on the ground that its October 22, 2015 Temporary Restraining Order was vacated once the Plaintiffs' motion for preliminary injunction had been denied. [Dkt. 80], at 5; 12-13. This June 2016 Order established that no restraints prevented the sale of the Property as of January 12, 2016, when Defendants Messrs. Akerman and Edward S. Feldman, who represented Mr. Sanford or his companies, telephoned the First Department to check on the status of the October 22, 2015 Order for interim relief. [Dkt. 80], at 6-10.

Further evidence that Plaintiffs' conspiracy claim was frivolous when it was filed is demonstrated by the fact that the amended complaint failed to allege that (1) Messrs. Akerman or Feldman knew the Court Attorney with whom they spoke on January 12, 2016, or her relationship to Mr. Esposito; (2) Mr. Sanford directed Messrs. Akerman or Feldman to speak with the Court Attorney (by name or title); (3) any of the alleged conspirators were in a position to route a telephone call to the Court Attorney; (4) the Court Attorney was a member of any alleged conspiracy when she picked up the phone to speak with Messrs. Akerman and Feldman on January 12, 2016; and (5) Messrs. Akerman and Feldman were aware of any plan to improperly obtain information from the Court Attorney. [Dkt. 80], at 18-20.

Despite the fact that they had an ongoing litigation before this Court related to the Property, on July 10, 2017, in what is difficult to interpret as anything other than judge shopping, Plaintiffs' counsel, in violation of Local Civil Rule 1.6 of the Local Rules of the Southern and Eastern Districts of New York regarding related cases, as well as 28 U.S.C. §1391, filed his initial complaint in the Eastern District of New York. The case was assigned to Judge Leonard D. Wexler. Akerman Dec., ¶ 7. The filing of that complaint is consistent with Plaintiffs' litigation strategy to sue Mr. Sanford and his lawyers. Previously, Plaintiffs had sued two of Mr. Sanford's prior law firms, Meister, Selig & Fein LLP and Dechert LLP in separate litigations before this Court along with two actions against Dechert LLP before the New York Supreme Court, New York County. Akerman Dec., ¶ 25.

On November 13, 2017, Mr. Daniel A. Osborn, another lawyer for Mr. Sanford, appeared in New York State Supreme Court in Nassau County in yet another action brought by Mr. Berry on behalf of Plaintiffs. According to Mr. Osborn's Declaration:

> Immediately after we handed-up papers and following a very brief dialogue with Justice Sher, the judge excused herself. Mr. Berry

> then turned to me and asked, "You know what happens next, right?"
> I said I did not and he promptly informed me that I would be sued.
> When I asked about the basis for his lawsuit, his response was that
> "I sue all of Sanford's lawyers."

Akerman Dec., ¶ 24; Ex. N.

On July 21, 2017, pursuant to Judge Wexler's rules, the Dorsey Defendants sent a letter to Judge Wexler asking for a motion conference to dismiss the complaint. Specifically, the letter pointed out that under the local rule the complaint should have been filed in the Southern District as a related case and venue was improper not only because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York, not the Eastern District, but also because Mr. Feldman was not a resident of the State of New York, requiring the complaint to be filed in the Southern District. Indeed, the letter pointed out that Plaintiffs' counsel was fully aware from a deposition taken of Mr. Feldman that he resided in New Jersey. Akerman Dec., ¶¶ 8-14., Ex. F.

The letter on behalf of the Dorsey Defendants also joined a letter submitted to Judge Wexler by defendant Frank Esposito on July 21, 2017, which directly addressed the merits of Plaintiffs' claims. Mr. Esposito's letter, supported by citation, stated that the complaint failed, among other things, to allege a proper conspiracy pursuit to 42 U.S.C. § 1983, and that the state fraud claims did not comply with Fed. R. Civ. P. 9(b). Akerman Dec., ¶ 15, Ex. G. Realizing that his efforts at judge shopping would be unsuccessful, on July 28, 2017, after all the defendants submitted letters for a pre-motion conference, Plaintiffs' counsel filed a Notice of Dismissal without Prejudice pursuant to Fed. R. Civ. P.41(a)(1)(A)(i). Akerman Dec., ¶ 16, Ex. H.

On August 2, 2017, after having been placed on written notice of the frivolousness of his claims, Plaintiffs' counsel, undeterred, filed virtually the same complaint before this Court. Akerman Dec., ¶ 17, Ex. I.

On August 11, 2017, Plaintiffs deposed Mr. Akerman on this matter in the related case referenced above as *Knopf v. Phillips, et al.* The Dorsey Defendants were represented at that deposition by Jonathan Herman, a Dorsey partner. In that deposition, Plaintiffs' counsel heard confirmation that Mr. Akerman's only involvement in the alleged conspiracy was a brief phone call with the clerk's office of the First Department Appellate Division in January of 2016, in which Mr. Akerman was coincidentally transferred to an alleged co-conspirator, the First Department Court Attorney, who happened to be Esposito's wife. That deposition also confirmed that Mr. Akerman had never previously met or spoken to Mr. Esposito or his wife and knew nothing about them before the complaint was filed in the Eastern District. Akerman Dec., ¶ 19, Ex. K.

Plaintiffs' counsel's bad faith pursuit of this action is further illustrated by an August 7, 2017, email he sent to an individual named Woody Knopf and apparently by mistake to Mr. Sanford:

> As to Knop [*sic*] v. Sanford, "Our motion which seeks to have the Appellate Division enter judgment based on Gammerman's findings is of course filed, and Sanford may have defaulted in responding to it. I need to speak to someone in the Clerk's office about whether the return date has come and gone or has been adjourned, but the pertinent clerk was not in Friday and is not in until later today. So I'll let you know.

Akerman Dec., ¶ 18, Ex. J. The premise of this case is that such a call seeking procedural information is on its face improper: that is what Mr. Akerman was charged with doing. But Mr. Berry's call to the Clerk's Office at the First Department was no different than the call Mr.

5

Akerman had made to the Clerk's Office to determine the procedural status of a matter, which Mr. Berry made the centerpiece of this lawsuit. Akerman Dec., ¶ 18, Ex. J.

On August 15, 2017, the Court directed Plaintiffs to file their amended complaint by September 2, 2017, which they did, alleging the same causes of action. The parties thereafter appeared before this Court for an initial conference, at which point the Court stated:

> And, Mr. Berry, if when you have a chance to look at the motions to dismiss that are being filed you decide next week that you want to voluntarily dismiss the claims in whole or in part, narrow the set of defendants, otherwise address the Esposito case, please let the individual defendants in Esposito know promptly so they don't have to put time and energy into opposing something that you are going to agree to dismiss. Is that agreeable, sir?
>
> MR. BERRY: Yes, of course.
>
> THE COURT: OK, good.

Mr. Berry voluntarily dismissed just one of the claims against the Dorsey Defendants but none of the other defendants, after the Dorsey Defendants filed their motion to dismiss. Akerman Dec., ¶ 23, Ex. M.

### 2. Attorney's Fees Incurred by Dorsey in Defense of this Action

The total fees Dorsey expended in defense of the Plaintiffs' claims against the Dorsey Defendants are $227,351, excluding time expended for this motion. Three Dorsey partners, including Mr. Akerman, devoted time to this matter. Mr. Akerman has been practicing law since 1972. Peter Lancaster is a partner in Dorsey's Minneapolis office, oversees all claims made against the firm, and has practiced law since 1981. Jonathan Herman, who represented the Dorsey Defendants at Mr. Akerman's deposition is a partner in Dorsey's New York office and has been practicing law since 1973. Amanda Prentice is an associate in the New York Office who has been practicing law since 2012. See Ex. B. There are two paralegals in the New York

Office, Rebecca Glover and Joseph Lanz and one in the Minneapolis Office, Steve Jarzyna, who assisted on this matter. Akerman Dec., ¶ 2.

All the hourly rates for the attorneys who worked on this matter were well within the range of the hourly rates currently charged in either New York City or Minneapolis. Mr. Akerman's hourly rate on this matter was initially $975 and in accordance with Dorsey's policy of increasing rates beginning on October 1, 2017, increased to $1020. Mr. Herman's hourly rate was $935. The survey for partners, associates, and of counsel in New York conducted by ALM Intelligence shows that the hourly rates for Messrs. Akerman and Herman were well below the high rate for New York City partners at $1350. Mr. Lancaster's hourly rate was $645 and increased to $650 on October 1, 2017. Ms. Prentice's hourly rate was $500 and on October 1, 2017, increased to $540. Again, the ALM Intelligence survey referenced above shows that her hourly rate is well within the range of hourly rates charged for associates in New York City. Akerman Dec., ¶ 3, Ex. C.

The work performed on this matter was not a simple motion to dismiss the complaint. It was more akin to a motion for summary judgment made after discovery. Plaintiffs deposed all of the defendants and individuals referenced in their Complaint, which testimony was relied upon and in some instances cited by Plaintiffs in their final Amended Complaint. There was also prior deposition testimony and procedural history in other related cases that had to be reviewed. Despite this complexity, Dorsey is only seeking $177,857.50 of its recorded fees of $227,351 as a conservative number to avoid any issues relating to the reasonableness of its fees. This number is arrived at by excluding all fees incurred as a result of preparing for and attending Mr. Akerman's deposition. Thus, Dorsey has excluded the fees for Mr. Herman and $19,012.50 of

Mr. Akerman's fees incurred on July 28 and August 7 through 10, 2017 for deposition preparation and attendance.

### III. ARGUMENT

#### A. LEGAL STANDARD.

Pursuant to 42 U.S.C. § 1988(b), the Court, in its discretion, may award attorneys' fees to the prevailing party in a § 1983 action. The Second Circuit has stated that a prevailing defendant of a § 1983 claim should be awarded its attorneys' fees where the plaintiff's claim was "frivolous, unreasonable, or without foundation." *Abeyta v. City of N.Y.*, 588 F. App'x 24, 25-26 (2d Cir. 2014) (citing *Fox v. Vice*, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011)); *see also Gen. Camera Corp. v. Urban Dev. Corp.*, 734 F.2d 468, 468 (2d Cir. 1984) (discussing how fees should be awarded to a prevailing defendant where the plaintiff's claim was "unreasonable and groundless, if not frivolous") (quoting *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014). The Court may also award a defendant attorneys' fees where a plaintiff continues to litigate claims after they clearly became frivolous, unreasonable, or groundless. *See Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006). The Court need not determine whether the claim was made in bad faith in order for it to award a defendant's attorneys' fees based on § 1988(b). *See Gen. Camera Corp.*, 734 F.2d at 468.

Where the Court finds that an attorney's "action are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose, such as delay, and a finding of conduct constituting or akin to bad faith," it may also sanction an attorney and hold him or her jointly and severally liable for attorneys' fees pursuant to 28 U.S.C. § 1927. *Malkan v. Matua*, 699 F. App'x 81, 83 (2d Cir. 2017) (*quoting In re 60 East 80th Street Equities*, 218 F.3d 109, 115 (2d Cir. 2000)) (internal quotations omitted); *see also Gust, Inc. v. AlphaCap*
8

*Ventures, LLC*, 226 F. Supp. 3d 232, 248 (S.D.N.Y. 2016) (Cote, J.). A claim is made in bad faith if it is "motivated by improper purposes such as harassment or delay," or is brought to needlessly increase litigation costs or unduly burden the Court. *Malkan*, 699 F. App'x at 84 (internal quotations omitted.).

In order to determine if the attorneys' fees claimed are reasonable, courts employ the standard set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983), which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Prevailing parties should make a good-faith effort to exclude fees that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. "According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Hernandez v. Berlin Newington Assocs., LLC*, 699 F. App'x 96, 96-97 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)) (internal quotations omitted).

## B. THE ACTION WAS FRIVOLOUS, UNREASONABLE, AND LACKED FOUNDATION.

The record, including the First Department Appellate Division's various orders regarding Plaintiffs' claims to the Property, and Plaintiffs' counsel's emails establish that Plaintiffs' claims were frivolous, unreasonable, and groundless—even setting aside issues of bad faith—in order to extract a settlement from Mr. Sanford and likely discourage attorneys from representing him. As this Court made clear in its order granting dismissal [Dkt. 80], the First Department orders from which Plaintiffs' § 1983 claim arose were issued in 2015, weeks before any alleged conspiratorial conversation between Messrs. Akerman and Feldman, and the First Department Court Attorney. [Dkt. 80], at 18. Accordingly, Plaintiffs knew that if they were unhappy with any of the orders issued in the state court action, they could have redressed them in a variety of

9

ways (which they have, unsuccessfully thus far), including through appeals. *Id.* Moreover, Plaintiffs' counsel's emails reveal that he (1) also contacted a court clerk "ex parte" to discuss procedural case issues, and (2) apparently is conducting some sort of vendetta against Mr. Sanford and his lawyers, exemplified by statements such as, "This is really going to hurt you and others," "Figure out a way to end it now," "You want to be a footnote in a famous case?," and "I sue all of Sanford's lawyers." Akerman Dec., ¶¶ 6; 18; 25.

Plaintiffs had ample opportunity to withdraw their claims, after reviewing all of defendants' letters to Judge Wexler and the relevant citations therein and appearing at a conference before this Court. Plaintiffs had an additional opportunity to withdraw their claims after reviewing Mr. Esposito's motion to dismiss, filed in advance of the other defendants. However, Plaintiffs failed to do so, causing all defendants to expend additional resources defending meritless claims. For these reasons, Plaintiffs have demonstrated an abuse of the judicial system and should be required to cover defendants' attorneys' fees.

### C. PLAINTIFFS' CLAIMS LACKED A GOOD FAITH BASIS AND WERE BROUGHT TO HARASS DEFENDANTS.

The email from Mr. Berry to Mr. Sanford on June 30, 2017, issuing threats regarding continued litigation and harassment to Mr. Sanford, along with those associated with him, unless he could "figure out a way to end it now," because "[t]his is really going to hurt you and others," demonstrates Mr. Berry's true motivation in filing this latest lawsuit. Akerman Dec., ¶ 4, Ex. C. In addition, as Mr. Osborn, another attorney for Mr. Sanford observed, Mr. Berry pointedly informed him in no uncertain terms that Mr. Osborn would be personally sued for representing Mr. Sanford in a related state court action, because Mr. Berry "sue[s] all of [Mr.] Sanford's lawyers." Akerman Dec., ¶ 23, Ex. M. It is clear that Mr. Berry relishes in attempting to "hurt" Mr. Sanford and those who associated with him, using any means necessary, including

personally naming Mr. Sanford's lawyers in litigations, as a means to intimidate Mr. Sanford and anyone who may consider representing him. This behavior should not be countenanced and the Court should personally sanction Mr. Berry pursuant to 28 U.S.C. § 1927.

Moreover, this Court has previously found that Plaintiffs acted in bad faith in a related matter featuring a different law-firm defendant, styled *Knopf v. Meister, Seelig & Fein, LLP*, No. 15-cv-5090 (DLC), 2016 U.S. Dist. LEXIS 37079, at *6-7 (S.D.N.Y. Mar. 22, 2016), in which they filed a notice of pendency in bad faith against the Property. *See also Knopf v. Meister Seelig & Fein, LLP*, No. 15-cv-5090 (DLC), 2015 U.S. Dist. LEXIS 141227, at *5-6 (S.D.N.Y. Oct. 16, 2015).This case, involving the same underlying facts regarding the Property, should lead to the same conclusion.[1]

### D. THE DORSEY DEFENDANTS' FEES ARE REASONABLE AND SHOULD BE AWARDED.

The fees claimed by the Dorsey Defendants are reasonable. As described above, the Dorsey Defendants recorded time charges of $227,351 in defense of this matter. Akerman Dec., ¶ 2. They have reduced their request for fees to $177,857.50 as a conservative number to avoid any issues relating to the reasonableness of its fees by excluding fees for the preparation and attendance at Mr. Akerman's deposition. All of the hourly rates for the attorneys who worked on this matter are within the range that is considered reasonable by a third-party surveyor. *Id.*, ¶ 3. The amount expended on this matter is also reasonable under the circumstances. This case is unusual in that Plaintiffs forced Mr. Akerman to sit for a deposition in a related case, *Knopf v. Phillips et al.*, on August 11, 2017, after Plaintiffs filed their complaint in this case on August 2,

---

[1] This Court invited the defendant in the *Meister, Seelig & Fein LLP* action to file an application for attorneys' fees pursuant to 28 U.S.C. § 1927 at the conclusion of the proceedings therein. *Id.* at *21.

2017. Plaintiffs used that deposition as a means to take discovery in this matter, which accounts for an increase in attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, Defendants Dorsey and Mr. Akerman respectfully request that the Court grant their motion for attorneys' fees and costs, hold Plaintiffs and their counsel jointly and severally liable for the same, and award such other relief as the Court deems just and proper.

Dated: New York, New York
December 26, 2017

**DORSEY & WHITNEY LLP**

By /s/ *Nathaniel H. Akerman*
NATHANIEL H. AKERMAN (SBN 1631837)
akerman.nick@dorsey.com
51 West 52nd Street
New York, NY 10019
(212) 415-9200

~and~

Peter M. Lancaster
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
*To be admitted pro hac vice*

Attorneys for Defendants DORSEY & WHITNEY LLP and NATHANIEL H. AKERMAN