UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORMA KNOPF and MICHAEL KNOPF,

                      Plaintiffs,

-against-

FRANK M. ESPOSITO, DORSEY & WHITNEY LLP, NATHANIEL H. AKERMAN, EDWARD S. FELDMAN and MICHAEL HAYDEN SANFORD,

                      Defendants.

Case No.: 17-cv-05833 (DLC) (SN)

## DECLARATION OF NATHANIEL H. AKERMAN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

NATHANIEL H. AKERMAN, under penalty of perjury, declare as follows:

1. I am a partner at Dorsey & Whitney LLP ("Dorsey"), and as such, represent myself and Dorsey in the above-captioned case. I make this Declaration in support of Dorsey's and my motion for attorneys' fees and costs from the Plaintiffs and Plaintiffs' counsel pursuant to Title 42, U.S.C. § 1988, and 28 U.S.C. § 1927.

2. Attached as **Exhibit A** is the billing record maintained by Dorsey of the time and hourly rate of each of the lawyers and paralegals who worked on this matter. The total fees were $227,351. This record does not include the time expended for this motion. Certain of the descriptions of the services performed are redacted based on attorney-client privilege and the work product privilege. If requested, I will make a copy of the un-redacted invoices for the Court to review *in camera*. There were three Dorsey partners, including myself, who billed time on this matter. I have been practicing law since 1972. Peter Lancaster is a partner in Dorsey's Minneapolis office, oversees all claims made against the firm, and has practiced law since 1981. Jonathan Herman, who represented Dorsey and me at my deposition, is a partner in the New

York office and has been practicing law since 1973. Amanda Prentice is an associate in the New York Office who has been practicing law since 2012. Annexed as **Exhibit B** are the resumes of each of the Dorsey lawyers from the firm's website. There are two paralegals in the New York Office, Rebecca Glover and Joseph Lanz and one in the Minneapolis Office, Steve Jarzyna, who assisted on this matter.

3. All of the hourly rates for the attorneys who worked on this matter were well within the range of hourly rates currently charged in either New York City or Minneapolis. My hourly rate on this matter was initially $975 and in accordance with Dorsey's policy of increasing rates beginning on October 1, 2017, my rate increased to $1020 on that date. Mr. Herman's hourly rate was $935. Annexed as **Exhibit C** is the 2016 survey for partners, associates and of counsel in New York conducted by ALM Intelligence, which shows that the hourly rates for me and Mr. Herman are well below the high rate for New York City partners at $1350. Mr. Lancaster's hourly rate was $645 and increased to $650 after October 1, 2017. Ms. Prentice's hourly rate was $500 and on October 1, 2017 was increased to $540. **Exhibit C** shows that her hourly rate is well within the range of hourly rates charged for associates in New York City.

4. The work performed on this matter was not a simple motion to dismiss the complaint. It was more akin to a motion for summary judgment made after discovery. Plaintiffs deposed all of the defendants and individuals referenced in their initial Complaint, which testimony was relied upon and in some instances cited by the Plaintiffs in their final Amended Complaint [Dkt. 12]. Prior deposition testimony and procedural history in other related cases also had to be reviewed. Despite this complexity, Dorsey is only seeking $177,857.50 of its recorded fees of $227,351 as a conservative number to avoid any issues relating to the

reasonableness of its fees. This number is arrived at by excluding all fees incurred as a result of preparing for and attending my deposition. Thus, I have excluded the fees for Mr. Herman and $19,012.50 of my fees incurred on July 28 and August 7 through 10, 2017 for deposition preparation and attendance.

5. On June 30, 2017, Plaintiffs' counsel, Eric Berry, sent the following email, annexed hereto as **Exhibit D**, to Defendant Michael Sanford threatening this lawsuit if he did not settle the outstanding lawsuits brought against him by the Knopfs:

> This is really going to hurt you and others
> Figure out a way to end it now
> You want to make me prove I am serious?
> Don't bother me until Wed pm complaint in the EDNY on Thurs Am. –
> not sure how many defendants
> A scholar's dream on the absolute immunity afforded non-judicial court employees who wrongly assume a judicial function. Just typing it makes me want to do it.
> This is a lawyer's law-orgasm.
> You want to be a footnote in a famous case?

As this email reflects, the purpose of this lawsuit was "to hurt" Sanford "and others" to get him to settle with Plaintiffs on the other related lawsuits against him seeking to recover proceeds from the sale of a property on East 67th Street in Manhattan (the "Property"), and reflects that Plaintiffs' counsel knew he was bringing a lawsuit that was based on speculation and "[a] scholar's dream on the absolute immunity afforded non-judicial court employees who wrongly assume a judicial function."

6. Further evidence that Plaintiffs knew that this lawsuit was frivolous before it was filed is provided by the June 16, 2016 Order of the First Department Appellate Division in a state action brought by Plaintiffs to recover the Property, which denied Plaintiffs' motion for contempt on the ground that a previously issued October 22, 2015 Temporary Restraining Order was vacated once the Plaintiffs' motion for preliminary injunction had been denied. This June 2016

Order clarified that there were no restraints on the sale of the Property. As their complaint reflects, Plaintiffs were aware of this June 2016 Order prior to filing the lawsuit. On November 2, 2017, the First Department Appellate Division denied Plaintiffs' motion to vacate the June 2016 Order. *See* this Court's Opinion and Order of December 7, 2017 [Dkt. 80], at 12-13.

7. On July 10, 2017, the original 50-page complaint in this matter was filed in the Eastern District of New York, alleging the same causes of action that ultimately were filed before this Court: Conspiracy to Violate 42 U.S.C. § 1983, Violation of New York Judicial Law § 487, Fraud and Deceit, and Fraudulent Conveyance in Violation of Article 10 of the New York Debtor and Creditor Law. The case was assigned to the Honorable Leonard D. Wexler. A copy of that complaint is annexed hereto as **Exhibit E**.

8. On July 21, 2017, pursuant to Judge Wexler's Individual Motion Practice and Rules, Dorsey and I wrote to the court for a pre-motion conference. A copy of the letter to the court is annexed hereto as **Exhibit F**. In that letter, we stated our intention to file a motion to dismiss for a lack of venue pursuant to 28 U.S.C. § 1391(b), or in the alternative, for a change of venue pursuant to 28 U.S.C. §1404(a) to transfer this action to the Southern District of New York, where a related action was currently pending before this Court, captioned as *Knopf v. Phillips, et al.*, 16-cv-6601, and where another related case, *Knopf, et al. v. Meister Seelig & Fein, LLP*, 15-cv-5090, had been dismissed on April 24, 2017. The letter explained that those two actions, like this one, arose out of the sale of the same "residential property located at 44 East 67th Street in Manhattan. Complaint, ¶ 9." The letter stated that Plaintiffs' Counsel in this case also represented Plaintiffs in the two related cases.

9. Our letter explained that the bases for the motion to dismiss were "(1) the filing of the instant Complaint in the Eastern District of New York violates Local Civil Rule 1.6 of the

Local Rules of the Southern and Eastern Districts of New York, (2) venue is improper because none of the events giving rise to the claims in the Complaint arose in the Eastern District of New York and not all of the defendants reside in New York as required by 28 U.S.C. § 1391(b), and (3) the consolidation of the action in the Southern District of New York will serve to promote judicial economy and avoid inconsistent rulings." **Ex. F** at 1.

  10. The letter quoted Local Civil Rule 1.6, to Judge Wexler:

> (a) It shall be the continuing duty of each attorney appearing in any civil or criminal case to bring promptly to the attention of the Court all facts which said attorney believes are relevant to a determination that said case and one or more pending civil or criminal cases should be heard by the same Judge, in order to avoid unnecessary duplication of judicial effort. As soon as the attorney becomes aware of such relationship, said attorney shall notify the Judges to whom the cases have been assigned.
>
> (b) If counsel fails to comply with Local Civil Rule 1.6(a), the Court may assess reasonable costs directly against counsel whose action has obstructed the effective administration of the Court's business.

  11. The letter set forth that "Mr. Berry failed to comply with this rule 'to avoid unnecessary duplication of judicial effort' when he filed the instant related action in this district. He did so after taking depositions and discovery on the Southern District actions to form the basis for certain of his allegations in this case. Indeed, the instant Complaint acknowledges that 'the Knopfs learned the identity of the [Appellate Division, First Department] court attorney,' who was at the center of his allegations in this new Complaint, in a related action – *Knopf v. Phillips*, 16 Civ. 6601 (S.D.N.Y.) (DLC).' Complaint, ¶14"; **Ex. F** at 2.

  12. The letter also stated that "[e]ven though the complaint recites 28 U.S.C. § 1391(b)(2) as its basis for venue ('this action arises out [*sic.*] events which occurred in Nassau and Suffolk Counties),' Complaint, ¶ 24, it is simply not correct that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York. Every single alleged event supporting the causes of action in the instant Complaint occurred in

Manhattan. The property, which is the subject of this complaint, is located in Manhattan. The Appellate Division, First Department, and the underlying state action are all located in Manhattan." *Id.*

13. The letter also relied upon section 1391(b)(1), stating that "the Eastern District of New York could be an appropriate venue if it were 'a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.'" But, the letter notified the court that "the defendant Edward S. Feldman is a resident of New Jersey and that "in a recent deposition taken of Mr. Feldman in *Knopf v. Phillips, et al.*, Mr. Berry learned that Mr. Feldman is a resident of New Jersey." *Id.* Thus, the letter made clear that "no 'events or omissions giving rise to the claim occurred' in the Eastern District of New York and not all defendants' are residents of New York.'" *Id.* Moreover, the letter cited cases establishing that the Plaintiffs could not claim that there was no district in which this action might be brought, since they brought two related actions in the Southern District. *See* §1391(b)(3).

14. The letter also stated that "even if venue is proper in the Eastern District, and as stated above, it is not, the Court should order a change of venue pursuant to 28 U.S.C. §1404(a) 'in the interest of justice.' This is consistent with Local Civil Rule 1.6, which mandates that 'one or more pending . . . civil cases should be heard by the same judge to avoid unnecessary duplication of judicial effort.'" The letter stated that "Judge Cote has already ruled on issues of attorney-client privilege that relate directly to this case. By maintaining the instant Complaint in this district there will unquestionably be the potential for contradictory rulings and a duplication of issues that will relate to all three cases." **Ex. F** at 2.

15. Our letter also joined the letter submitted to Judge Wexler by Defendant Frank Esposito on July 21, 2017, in which he stated that the complaint failed, among other things, to

allege a proper conspiracy pursuant to 42 U.S.C. § 1983. A copy of Mr. Esposito's letter is annexed hereto as **Exhibit G**. Finally, the letter argued that the remaining state fraud claims did not comply with Fed. R. Civ. P. 9(b). **Ex. G** at 3.

16. On July 28, 2017, after all the defendants submitted letters for a pre-motion conference, Plaintiffs' counsel filed a Notice of Dismissal without Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). A copy of the Notice of Dismissal is annexed hereto as **Exhibit H**.

17. After having violated Local Civil Rule 1.6 of the Southern and Eastern Districts on related cases and the venue rules to avoid the jurisdiction of this Court, and after having been placed on written notice of the frivolousness of his claims, on August 2, 2017, Plaintiffs' counsel, undeterred, filed virtually the same complaint before this Court [Dkt. 1]. A copy of the complaint is annexed hereto as **Exhibit I**.

18. On August 7, 2017, Mr. Berry sent an email to an individual named Woody Knopf and apparently by mistake to Mr. Sanford, writing in part as follows:

> As to Knop [*sic*.] v. Sanford, "Our motion which seeks to have the Appellate Division enter judgment based on Gammerman's findings is of course filed, and Sanford may have defaulted in responding to it. I need to speak to someone in the Clerk's office about whether the return date has come and gone or has been adjourned, but the pertinent clerk was not in Friday and is not in until later today. So I'll let you know.

A copy of that email is annexed hereto as **Exhibit J**. Mr. Berry's call to the Clerk's Office at the Appellate Division was no different than the call I had made to the Clerk's Office to determine the procedural status of orders regarding the Property, which Mr. Berry turned into this lawsuit.

19. On August 11, 2017, Plaintiffs deposed me on this matter in the related case referenced above as *Knopf v. Phillips, et al.* Dorsey and I were represented at that deposition by Mr. Herman. In that deposition, Plaintiffs' counsel learned that my only involvement in the new complaint was a brief phone call with the clerk's office of the First Department Appellate

Division, in which I was transferred to a court attorney, who also happened to be Esposito's wife, by coincidence. The deposition confirmed to Mr. Berry that, consistent with all other testimony taken in connection with this or related cases, I had never previously met or spoken to, Mr. Esposito or his wife prior to the filing of the complaint in the Eastern District. The deposition also confirmed that in the brief phone call to the First Department's clerk's office, my opinion was confirmed that the First Department's denial of Plaintiffs' motion for a preliminary injunction against the sale of the Property vacated the Temporary Restraining Order requiring the proceeds from any sale of the Property to be placed in escrow. Relevant pages of my deposition are annexed hereto as **Exhibit K**.

20. On August 12, 2017, Mr. Esposito filed his motion to dismiss the subject action pursuant to Fed. R. Civ. P 9(b) and 12(b)(6) [Dkt. No. 9-10].

21. On August 15, 2017, this Court "Ordered that the plaintiffs shall file any amended complaint by September 2" and made clear that "[i]t is unlikely that the plaintiffs will have a further opportunity to amend." [Dkt. 11]. A copy of this Court's Order is annexed hereto as **Exhibit L**.

22. On September 2, 2017, Plaintiffs filed their Amended Complaint [Dkt. 12], alleging the same causes of action that had initially been alleged in their initial complaint filed in the Eastern District of New York.

23. On October 13, 2017, the parties appeared before this Court for an initial conference. A copy of the transcript of the conference is annexed hereto as **Exhibit M**. The Court stated at **Ex. M**, p. 9, to Plaintiffs' counsel:

> And, Mr. Berry, if when you have a chance to look at the motions to dismiss that are being filed you decide next week that you want to voluntarily dismiss the claims in whole or in part, narrow the set of defendants, otherwise address the Esposito case, please let the individual

> defendants in Esposito know promptly so they don't have to put time and energy into opposing something that you are going to agree to dismiss. Is that agreeable, sir?
>
> MR. BERRY: Yes, of course.
>
> THE COURT: OK, good.

The only claim Plaintiffs eventually dismissed after Dorsey and I filed our motion to dismiss was their fourth claim, for fraudulent conveyances pursuant to Article 10 of the New York Debtor and Creditor Law. [Dkt. 64], at 3. All other claims were presented to the Court.

24. On November 13, 2017, Daniel A. Osborn, another lawyer for Mr. Sanford in another related state court action filed by Plaintiffs, appeared in New York State Supreme Court in Nassau County. Mr. Berry appeared for Plaintiffs. According to Mr. Osborn's Declaration, annexed hereto as **Exhibit N**, Mr. Berry made this threat:

> Immediately after we handed-up papers and following a very brief dialogue with Justice Sher, the judge excused herself. Mr. Berry then turned to me and asked, "You know what happens next, right?" I said I did not and he promptly informed me that I would be sued. When I asked about the basis for his lawsuit, his response was that "I sue all of Sanford's lawyers."

25. In addition to this case, Plaintiffs sued Meister, Selig & Fein, LLP, a law firm that had represented Mr. Sanford, before this Court in *Knopf, et al. v. Meister Seelig & Fein, LLP*, 15-cv-5090. Plaintiffs and their counsel also sued another law firm that had represented Mr. Sanford, Dechert LLP, in this Court and New York State Supreme Court, New York County. *See Berry v. Dechert*, Index No. 152360/16, *Knopfs v. Dechert and Pursuit*, Index No. 157098/16 and *Knopfs v. Dechert*, 16 cv 2014 (S.D.N.Y.)

Dated: December 26, 2017

I declare under penalty of perjury that the foregoing is true and correct.

By: /s/ Nathaniel H. Akerman
Nathaniel H. Akerman