UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                           :

NORMA KNOPF and MICHAEL KNOPF,

                          :    No. 17 CV 5833 (DLC) (SN)

                 Plaintiffs,       :    ECF CASE

v.                                           :

FRANK ESPOSITO, DORSEY & WHITNEY, LLP,    :
NATHANIEL ACKERMAN, EDWARD FELDMAN, :
and MICHAEL SANFORD,                          :

                 Defendants.      :

--------------------------------------------------------------------X

# DEFENDANT ESPOSITO'S MEMORANDUM
## OF LAW IN SUPPORT OF HIS MOTION FOR FEES AND SANCTIONS

ESPOSITO, PLLC
FRANK ESPOSITO
275 Madison Avenue
14th Floor
New York, NY  10016
fesposito@eplawllc.com
Telephone:  (212) 537-3896
Facsimile:  (646) 304-5624

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES........................................................................................... iv

INTRODUCTION.......................................................................................................... 1

PROCEDURAL HISTORY............................................................................................ 2

FACTS RELEVANT TO THIS MOTION...................................................................... 4

      A.        Plaintiffs' Bad Faith In Litigating This Case................................................. 4

      B.        The Attorney's Fees Incurred by Esposito....................................................... 9

ARGUMENT................................................................................................................ 11

      A.        The Standard To Be Applied To Motions
                For Attorney's Fees Under 42 USC § 1988.......................................... 11

      B.        The Standards To Be Applied To Motions For Sanctions
                Under 28 USC § 1927, FRCP 11 and the Court's Inherent Power...................... 13

      C.        The First Department's June 16th Order Rendered This Action
                Frivolous From The Start...................................................................... 15

      D.        Plaintiffs' Litigation Strategy Centered On
                Harassment And Reputational Harm...................................................... 15

      E.        Plaintiffs Continued Litigating This Action
                Long After They Knew It Was Doomed............................................... 18

      F.        Only An Award of Fees And Sanctions Can Deter Plaintiffs
                And Their Counsel From Additional Frivolous Litigation................................. 18

      G.        Plaintiffs Attorneys Should Be Jointly Liable For Fees and Sanctions............. 19

CONCLUSION............................................................................................................. 19

# TABLE OF AUTHORITIES

**Federal Cases**

Abeyta v. City of N.Y., 588 F. App'x 24 (2d Cir. 2014) ............................................................. 11

Baker & Hostetler LLP v. United States DOC, 473 F.3d 312
(D.C. Cir. 2006) ............................................................................................................................. 12

Bond v. Blum, 317 F.3d 385 (4th Cir. 2003) ............................................................................... 12

Carter v. Incorporated Village of Ocean Beach, 759 F.3d 159 (2d Cir. 2014) ......................... 12

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) .......................................................................... 13

Eisemann v. Greene, 204 F.3d 393 (2d Cir. 2000) ..................................................................... 13

Fontanillas-Lopez v. Bauza Cartagena, 832 F.3d 50 (1st Cir. 2016) ........................................ 12

Fox v. Vice, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011) .............................................................. 11

Gen. Camera Corp. v. Urban Dev. Corp., 734 F.2d 468 (2d Cir. 1984) .............................. 11, 12

Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.,
236 F.3d 214 (5th Cir. 2000) ....................................................................................................... 12

Harbulak v. County of Suffolk, 654 F.2d 194 (2d Cir. 1981) ..................................................... 12

Hensley v. Eckerhart, 461 U.S. 424 (1983) ................................................................................ 13

Hernandez v. Berlin Newington Assocs., LLC, 699 F. App'x 96 (2d Cir. 2017) ....................... 13

Kay v. Ehrler, 111 S.Ct. 1435 (1991) ......................................................................................... 12

Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979 (2016) .................................................. 12

Knopf v. Esposito, 17cv5833(DLC)
2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017).......................................................................... 2, 3, 10

Knopf v. Meister Seelig & Fein, No. 15cv5090
2016 U.S. Dist. LEXIS 37079 .................................................................................................. 4, 18

Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC)
2015 WL 6116926 (S.D.N.Y. Oct. 16, 2015) ............................................................................... 2

Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC)
2016 WL 1166368 (S.D.N.Y. Mar. 22, 2016) ................................................ 2

Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC)
2017 WL 1449511 (S.D.N.Y. Apr. 21, 2017) ................................................ 2

Knopf v. Phillips, 16cv6601(DLC)
2016 WL 7192102 (S.D.N.Y. Dec. 12, 2016) ........................................ 2, 9

Panetta v. Crowley, 460 F.3d 388 (2d Cir. 2006) ...................................... 12

Phonometrics, Inc. v Westin Hotel Co., 350 F.3d 1242 (Fed Cir 2003) .................................... 14

Ransmeier v Mariani, 718 F.3d 64 (2d Cir. 2013) ........................................ 13

Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999) ......................... 13, 14

Simmons v. N.Y.C. Transit Auth., 575 F.3d 170 (2d Cir. 2009) ............................... 13

Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding,
692 F.3d 888 (8th Cir. 2012) ............................................................... 12

**State Cases**

Manhattan Leasing Enterprises v. M.H. Sanford & Co. et al., No. 602118/2014 (DS)
(Supreme Court, Nassau County) ................................................................ 3

Manhattan Leasing Enterprises v. M.H. Sanford & Co. et al., No. 601820/2015
(Supreme Court, Nassau County) ................................................................ 3

Manhattan Leasing Enterprises v. M.H. Sanford & Co. et al., No. 609746/2016
(Supreme Court, Nassau County) ................................................................ 3

Manhattan Leasing Enterprises v. M.H. Sanford et al., No. 610135/2017 (DS)
(Supreme Court, Nassau County) ................................................................ 3

Manhattan Leasing Enterprises v. Esposito, Index No. 160455/2017
(Supreme Court, New York County) .......................................................... 3, 9

Mark v. Lenfast, 80 A.D.3d 426 (1st Dept. 2011) .................................... 18

**Federal Rules Of Civil Procedure**

Federal Rules of Civil Procedure 11 ...................................................... 1, 14

Federal Rules of Civil Procedure 54 ........................................................ 3

**<u>Federal Statutes</u>**

28 USC § 1927 ................................................................................ 1, 13, 19

42 U.S.C. § 1983 ............................................................................... 11

42 U.S.C. § 1988................................................................................ 1, 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

NORMA KNOPF and MICHAEL KNOPF,    :
   :    No. 17 CV 5833 (DLC) (SN)
          Plaintiffs,    :    ECF CASE
v.    :
   :
FRANK ESPOSITO, DORSEY & WHITNEY, LLP,  :
NATHANIEL AKERMAN, EDWARD FELDMAN,  :
and MICHAEL HAYDON SANFORD,    :
   :
          Defendants.    :
-------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### FRANK ESPOSITO'S MOTION FOR FEES, COSTS AND SANCTIONS

Frank Esposito (Esposito), an attorney with Esposito, PLLC, submits this memorandum of law in support of his motion for attorney fees, costs and sanctions pursuant to 42 USC § 1988, 28 USC § 1927 and Federal Rules of Civil Procedure 11.

### INTRODUCTION

This case stems from plaintiffs' allegations of a conspiracy among defendants Esposito, Akerman, Feldman, Sanford, Dorsey & Whitney and non-parties, James McGuire and Esposito's wife. Despite numerous First Department orders fatal to the allegations made herein, ample notice that the claims were baseless and numerous opportunities to withdraw, plaintiffs and their counsel, Eric Berry, Joseph Paykin and Gary Greenberg, prosecuted this frivolous action vexatiously and harassingly from the outset. On December 7, 2017, this Court agreed that plaintiffs' primary claim, an alleged conspiracy under 42 USC § 1983, failed as a matter of law and dismissed the amended complaint. As the prevailing parties, defendants should be awarded attorney fees pursuant to 42 USC § 1988. Because plaintiffs' counsel brought this action in bad faith, multiplied proceedings vexatiously and harassingly, and litigated this case in bad faith, an award of fees and sanctions is also warranted under Federal Rules of Civil Procedure (FRCP) 11 and 28 USC § 1927.

Plaintiffs and / or their counsel engaged in an incredible onslaught of harassing and improper conduct, including, but sadly not limited to, the following documented actions:

- Using allegations of criminal conduct to gain leverage in a civil suit;

- Using surreptitiously recorded deposition testimony to threaten Esposito and instill fear of reputational harm;

- Lying on the record during a deposition and denying the surreptitious videotaping;

- Threatening to have Esposito arrested;

- Threatening pre-trial publicity to instill fear of reputational harm;

- Filing and maintaining this patently frivolous federal lawsuit over a meaningless procedural telephone call that had no effect on any court order;

- Vexatiously multiplying proceedings;

- Impermissibly using this action as a collateral attack on First Department decisions, conduct for which Plaintiffs' counsel has been previously sanctioned; and,

- Writing that the plan is to spread "bribery" allegations in other venues.

Plaintiffs and their counsel should be sanctioned and required to pay Esposito's attorney fees.

## PROCEDURAL HISTORY

This is the eleventh multiplicitous action filed by Plaintiffs and their counsel against Michael Sanford, entities owned by him and / or their attorneys (in this iteration, defendants Dorsey & Whitney, Akerman, Feldman and Esposito). The Court's knowledge of these lawsuits is assumed from its decisions in several related cases filed by Plaintiffs. See, Knopf v. Phillips, 16cv6601(DLC) (Docket No. 220, filed December 22, 2017); Knopf v. Esposito, 17cv5833(DLC), 2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017); Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC), 2017 WL 1449511 (S.D.N.Y. Apr. 21, 2017); Knopf v. Phillips, 16cv6601(DLC), 2016 WL 7192102 (S.D.N.Y. Dec. 12, 2016); Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC), 2016 WL 1166368 (S.D.N.Y. Mar. 22, 2016); Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC), 2015 WL 6116926 (S.D.N.Y. Oct. 16, 2015).

This Court has dismissed on motion every claim before it brought by Plaintiffs against non-Sanford parties, including, Meister Seelig & Fein, Phillips, Esposito, Akerman, Feldman and Dorsey & Whitney. Despite more than eight years of acrimonious and vitriolic litigation, plaintiffs Norma and Michael Knopf (Plaintiffs), and their attorneys, have not obtained a final judgment against Sanford. See, e.g., Knopf v. Esposito, 17cv5833(DLC), *2, 2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017). It remains to be seen if they ever will.

Plaintiffs' counsel, Eric Berry, is also counsel to another entity with a purported judgment against Sanford, Manhattan Leasing Enterprises. See, Manhattan Leasing Enterprises v. Esposito, Index No. 160455/2017 (Supreme Court, New York County); see also, Manhattan Leasing Enterprises v. M.H. Sanford & Co. et al., No. 602118/2014 (DS) (Supreme Court, Nassau County), Manhattan Leasing Enterprises v. M.H. Sanford & Co. et al., No. 601820/2015 (Supreme Court, Nassau County), Manhattan Leasing Enterprises v. M.H. Sanford & Co. et al., No. 609746/2016 (Supreme Court, Nassau County), Manhattan Leasing Enterprises v. M.H. Sanford et al., No. 610135/2017 (DS) (Supreme Court, Nassau County). He has used the frivolous special proceeding to further harass Esposito with information received in the related proceedings here, and Esposito has moved to dismiss the amended petition. See, e.g., Manhattan Leasing Enterprises v. Esposito, Index No. 160455/2017 at ECF Nos. 21, 30.

Plaintiffs, and their counsel, have crossed all boundaries in litigating specious, baseless and frivolous actions against Esposito, his co-defendants here and others connected to Sanford. Nevertheless, Esposito offered to forbear from seeking fees or sanctions if Plaintiffs and their counsel ceased their conduct. Through their silence, they have declined and signaled that they intend to continue their campaign of harassment. Esposito is therefore constrained to seek assistance from this Court within the time constraints of FRCP 54.

## FACTS RELEVANT TO THIS MOTION

### A.    Plaintiffs' Bad Faith In Litigating This Case

Even before the commencement of this litigation, Plaintiffs' counsel evinced the bad faith that would permeate every action taken thereafter.[1]

On June 30, 2017, the Friday of the Independence Day holiday weekend, Plaintiffs and / or their counsel caused a Subpoena To Testify At A Deposition In A Civil Action (Dep. Subpoena) in the related Phillips case to be served on Esposito by their agent.  Despite listing Esposito's New York City office address on the papers, service was originally attempted at 6:30 a.m. at Esposito's private residence.  Esposito's two minor daughters woke to loud banging on the front door only to look out the window at two menacing looking men pounding on the door.  Alarmed, and listening to Esposito's daughters crying in fear, Esposito called the police who responded shortly thereafter and determined that these men were process servers sent by Plaintiffs and / or their counsel.  See, Declaration of Frank Esposito, dated December 27, 2017 and submitted in support of this motion (Espo. Decl.) at ¶ 7.

On July 1, 2017 Plaintiffs' counsel wrote that Akerman is the bad actor and Dorsey is the "deep pocket" showing the true motive for their actions.  This coincided with a telephone call Esposito had with Plaintiffs' counsel as part of his meet and confer requirement in relation to a motion to quash the subpoena served at 6:30 a.m.  Plaintiffs' counsel made clear that Plaintiffs intended to extract money from Dorsey, and others, the same way they obtained a settlement from Sanford's prior attorneys, Dechert, LLP.  That settlement agreement is believed to have resulted in

---

[1]     This Court has previously found Plaintiffs to have acted in bad faith and to have attempted to impermissibly use the federal court system to collaterally attack state court orders in a case related to this one.  Knopf v. Meister Seelig & Fein, No. 15cv5090, 2016 U.S. Dist. LEXIS 37079, ** 6-7 (stating "With respect to PHC, the notice of pendency was filed in bad faith because the fraudulent conveyance claim was made against MSF, not Pursuit, and there was no suggestion that MSF would be unable to pay any judgment entered against it. Furthermore, the filing of the Second Notices was an attempt by plaintiffs to, in effect, reverse the state court's decision to cancel the Initial Notices, and to obtain the equivalent of an attachment on the Properties pending judgment, an improper use of lis pendens.) (emphasis added).

payment to Plaintiffs, and perhaps Plaintiffs' counsel as contingency attorneys, of $265,000.  Espo Decl. at ¶ 8, Ex. A, p. 00015.

On July 10, 2017, Plaintiffs filed in the Eastern District substantially the same complaint as they later filed here.  Eventually, upon threat of a co-defendant's motion regarding blatent forum shopping, Plaintiffs withdrew the Eastern District complaint and filed this action, on August 2, 2017.

On August 10, 2017, Esposito sent Plaintiffs' counsel an email with a draft motion to dismiss.  Esposito explained the complaint was entirely without merit and stated "I hope not to have to file any version of [the motion to dismiss.]  I again implore you to withdraw the complaint. . . ." See, Espo. Decl. at Ex. A. p. 00005.  Plaintiffs refused to withdraw the complaint and Esposito moved to dismiss it on August 12, 2017.

On August 28, 2017, Esposito wrote to Plaintiffs' counsel and explained the lack of merit to Plaintiffs' case, the potential damage to reputations and the potential for a large fee / sanction award:

> As you know, I have unwaveringly, and since before you even filed the first complaint, explained my position that, for the reasons stated in my motion to dismiss, this case is without merit in law or fact. Neither Judge Cote nor the First Department have found a protectable interest. I believe the attorney fees alone in this case will be tremendous and I would hate to see your clients ordered to pay them. Beyond that, it seems to me that you are running a serious risk with 28 USC Sec 1927. Judge Cote has already found bad faith. I would not be surprised if she issues a sanction order sua sponte, if none of the defendants seek it.
>
> In short, again, I implore you to just withdraw the complaint before there is further damage to my reputation and Melissa's reputation.

See, Espo. Decl., Ex. A, p. 00006.

On September 2, 2017, in response to Esposito's motion to dismiss and correspondence, Plaintiffs filed an amended complaint.  The amended complaint failed to address the fatal legal flaws identified in Esposito's motion to dismiss, and instead, added pages of additional salacious allegations clearly designed to injure Esposito's reputation, as Plaintiffs' counsel claimed they

would.  See, amended complaint (DKT 12) at ¶ 110, raising issue of bribery and stating "Esposito, whom Sanford and Pursuit had retained and paid precisely for the purpose of removing the restraints on the 67th Street Property."  See also, Id. at ¶ 134(g) "Accepting a substantial payment of between $25,000 and $55,000 in consideration for his wife's assistance." and 135(h).  The Amended Complaint also added a specious claim for fraudulent conveyance against Esposito and alleged that Esposito's wife had "authored" an opinion when it is clear from the record that she authored no opinion.  See, id. at ¶¶ 107, 108 and 132.

On September 22, 2017, Esposito again wrote to Plaintiffs' counsel seeking to settle the matter.  Espo Decl., Ex A, p. 00015.  Instead of settling the case, Plaintiffs counsel threatened Esposito's reputation, threatened criminal liability, intimated that the case should be settled in a range akin to the $265,000 Dechert paid and wrote, in relevant part:

> No you don't. you know for a fact that this is the most detailed, particularized, documented and admitted civil rights conspiracy complaint that's ever been filed, and I know it and Cote knows it and the Second Circuit will know it. But instead of handling it like a professional and looking at things from the Knopfs' point of view, you belittle our work, threaten sanctions etc. The only reason you could possibly take this approach is because you feel so guilty about what you and your wife did to the Knopfs that you truly believe you should be punished and so instead of taking a conciliatory approach you act like a know it all, say inflammatory things in order to remind me that its actually worth making a point here. **Who cares who wins or loses**? Shouldn't what happened at least be examined? **For the record, I've received several calls from Law360.com about this case and have begged-- successfully, I believe -- that no article to be written**. **How much longer do you think that's going to remain the status quo**?.
>
> **There is no way your career survives this** -- which is why I devoted hours to trying to figure out how to get you out it -- and you an I both know it, and **I wish you would stop insulting Judge Cote by suggesting that she doesn't know crime when she sees one**.  . But why when you disparage my work, why should i keep trying to help you out?
>
> A couple final questions. **Why did Dechert's settlement offer go from $5K to $260k out of the $265k** at issue within 3 hours of my reporting my conversation with McGuire about the second June 16 order to Gary Mennitt. Why did  Sanford testify that McGuire was terrified of what would happen if the Knopfs learned that [your wife] had been his court attorney and was

> married to another of his attorneys. Maybe you are just a lot braver than
> Dechert and McGuire, maybe you are smarter. We'll see.

Id. It is important to note that this email, like others, shows how involved the Knopfs were in the decision-making process. Moreover, this e-mail chain shows that Plaintiffs knew they would lose in the District Court and pressed this case to get to the Second Circuit where they could spread more reputational harm. Id. (stating "done talking let's see what happens in the second circuit.").

Also on September 22, 2017, Esposito demanded, pursuant to FRCP Rule 11, that Plaintiffs withdraw their factually incorrect and misleading materials. Espo Decl., Ex. A, p. 00013. Plaintiffs declined to do so.

On October 2, 2017, in advance of the initial case management conference, Esposito again asked if Plaintiffs would dismiss this matter. Plaintiffs' counsel explained that Plaintiffs had been out of touch. Id. at p. 00018. These email exchanges establish how involved in the decision making process the Plaintiffs were.

On October 26, 2017, Plaintiffs' counsel sent a letter describing his intention to file a suit in Delaware to obtain privileged e-mails between Esposito and Sanford on the purported basis that Esposito represented Sanford Partners Voyager Fund despite Plaintiffs' knowledge that M.H. Sanford & Co. is the entity that engaged Esposito's firm. In the October 26th letter, Plaintiffs' counsel accuses Esposito of bribery. Plaintiffs' counsel also sent the letter to counsel for Esposito's wife, seemingly with the intention to terrify her. Espo. Decl. ¶ 10, Ex. B.

On October 30, 2017, in connection with specious subpoenas which are the subject of a motion to quash pending in a related Eric Berry matter, Plaintiffs' counsel threatened to have Esposito arrested. Id. at Ex. A, p. 00020.

On November 2, 2017, the First Department rejected the same specious allegations Plaintiffs made here when it denied Plaintiffs' motion to vacate the June 16 First Dept. Order that Plaintiffs

knew was fatal to their case.  See, DKT 59.[2]  Indeed, Plaintiffs argued before the First Department

that the June 16 amended order would have a collateral estoppel effect on their proposed litigation

here.  See, Affirmation of Eric Berry, dated June 19, 2017, at ¶¶ 4, 6 (stating "<u>the Original June 16,

2016 Order, like most of this Court's motions decisions [sic], did not set forth any reasoning, and

therefore would have had no collateral estoppel effect with respect to the underlying issues which

may arise again in related litigation in which the Knopfs seek to recoup the losses that occurred

when the 67th Street property was sold.</u>" (emphasis added).

Esposito sent the November 2, 2017 Order to the Court and to Plaintiffs' counsel (via ecf)

explaining that the order established the frivolousness of this case.  (DKT 59). Plaintiffs still

declined to withdraw the complaint.

On November 13, 2017 Plaintiffs' counsel stated to another of Sanford's attorneys that "I sue

all of Sanford's lawyers."  Declaration of Daniel Osborn, dated November 13, 2017 and described in

the Declaration of Nick Akerman, dated December 26, 2017 (DKT 84, Ex. N).    Whether

representing Plaintiffs or other related clients, opposing counsel repeatedly threatens to, and sues,

"all of" Sanford's attorneys in what appears to be a concerted effort to threaten and dissuade them

from providing legal services to his corporations which cannot defend themselves other than

through counsel.

On November 22, 2017, Plaintiffs' counsel wrote to Sanford and stated his intention to lose

in a related Nassau County action and spread bribery rumors about Esposito, stating "**obviousy

[sic], as you are aware, our intention here is to spin out the bribery story, lose something here,

and appeal it so that the esposito-ringel bribery stuff gets disclosed into the second**

---

[2]    Plaintiffs moved the First Dept. to vacate the June 16 Order and in support of their motion, Plaintiffs' counsel submitted an affirmation describing the collateral estoppel effect of the June 16 Order as currently written.  See, Affirmation of Eric Berry, dated June 19, 2017, at ¶¶ 4, 6 (stating "<u>the Original June 16, 2016 Order, like most of this Court's motions decisions [sic], did not set forth any reasoning, and therefore would have had no collateral estoppel effect with respect to the underlying issues which may arise again in related litigation in which the Knopfs seek to recoup the losses that occurred when the 67th Street property was sold.</u>" (emphasis added).

**department**. but you know this already." (DKT 75-4, p.2).  This is a threat that Plaintiffs' counsel has acted upon.  See, e.g., Manhattan Leasing Enterprises v. Esposito, Index No. 160455/2017 at ECF Nos. 21, 30.

On December 7, 2017, this Court dismissed the amended complaint in its entirety.  DKT 80. The Court reasoned, among other things, that the June 16 First Dept. Order held that there were no restraints on the sale of PHC, thus defeating Plaintiffs' claims as a matter of law.  Plaintiffs were aware of the effect of the June 16 First Dept. Order, having sought to vacate it because it represented a bar to their claims.  See, footnote 2, supra.  In addition, each of the defendants here explained to Plaintiffs that the June 16 First Dept. Order was fatal to Plaintiffs' claims and argued such in their respective motions to dismiss.

On December 14, 2017, in an effort to put an end to frivolous, vexatious and harassing litigation spurred by Plaintiffs and their counsel, Esposito sought a walk away settlement of any potentially remaining claims.  Esposito explained that his fees are already significant and wrote:

> Are you and the Knopfs entertaining a mutual release or am I constrained to examine and potentially file the full panoply of remedies I believe are available to me, including motions for fees, costs, sanctions (Rule 11 and Sec. 1927) and claims for defamation? I believe Judge Cote's decision is unassailable and not successfully appealable. My fees are already high but I am prepared to walk away if your side is.

Espo. Decl. Ex. A, p. 00021.  To date, Plaintiffs have refused to end their campaign of harassment despite Esposito's many good-faith efforts to deal with any matter between them and their counsel both before and after prevailing in this Court.

**B.     The Attorney's Fees Incurred by Esposito**

After eliminating excessive, redundant or otherwise unnecessary fees, Esposito's firm, Esposito, PLLC, expended a total of 154.7 hours on this case.  Those hours exclude time spent in the related Knopf v. Phillips case (including deposition preparation and motion practice in relation to this Court's September 25, 2017 Order quashing Plaintiffs' subpoena to J.P. Morgan Chase Bank

in relation to Esposito's banking records) and entries for ministerial correspondence representing entries of .1 or .2 hours.  Espo. Decl. ¶ 11, Ex. C.

Plaintiffs' own actions exacerbated the number of hours required to dismiss this case.  From their prolix complaints to inclusion of hundreds of pages of often irrelevant evidence, Esposito was routinely forced to expend numerous hours just sifting through Plaintiffs' papers, the myriad grammatical errors and often incorrectly cited materials.  Esposito has also cut from his firm's hours the additional time necessary to determine exactly what Plaintiffs were attempting to state in some instances, because Plaintiffs' papers were frequently far from a model of clarity and were often followed with some form of a "corrected" or "amended" version, requiring additional review.  Id. at ¶ 12.

Esposito will cut his firm's hourly rate for him to $800 per hour for this matter (from $1,125), resulting in fees of $123,760.  Plaintiffs are aware that Esposito's firm ordinarily bills $1,125 per hour for his time.  Indeed, Plaintiffs repeatedly referenced the engagement agreement between M. H. Sanford & Co. and Esposito's firm in the amended complaint and elsewhere.  See, DKT 62-11; see also, Knopf v. Esposito, No. 17cv5833(DLC), *3, 2017 WL 6210851 (SDNY Dec. 7, 2017).  That engagement agreement states, in pertinent part, "[o]rdinarily, for financial services industry clients, when EP [Esposito's firm] agrees to charge an hourly rate it is $1,125 per hour."  See, DKT 62-11.

It is worth noting that Esposito, who has been practicing law in New York City for twenty years, is a former big law attorney who is now General Counsel to a large insurance company and Chief Legal Officer to a publicly traded company.  He maintains a few large legacy clients through his firm and continues to accept a handful of significant other clients during his personal time where the issues are unique or he sympathizes with a potential client.  Id. at ¶¶ 4-6.

While with a large law firm, Esposito formerly papered what was then one of the largest bankruptcy settlements in the history of American jurisprudence (the multibillion dollar Enron Megaclaims Settlement) on which his name appears, with a few others, dismissing the matter, and litigated a number of significant cases representing former Mayor Rudolph Giuliani while he was an Assistant Corporation Counsel. He has previously been a clerk for Judge Weinstein in the Eastern District during law school, was an extern for the Innocence Project under Barry Scheck during the OJ Simpson trial and is a former Samuel Belkin Memorial Scholar and member of the Order of the Barristers, among other achievements. Id.

Esposito wrote to Plaintiffs numerous times and explained his fees are significant, most recently offering a walk-away dismissal to Plaintiffs who declined by their silence. Id. at Ex. A, p. 00021. Moreover, it is worthwhile to note that Plaintiffs sought at least $8 million on their two main claims against Esposito and related co-defendants, including $4 million and punitive damages on the 42 USC § 1983 claim. See, Amended Complaint at ¶ 188 (DKT 12).

The survey for partners, associates, and of counsel in New York conducted by ALM Intelligence and cited by co-defendant Dorsey, shows that the $800 hourly rate for Esposito is well below the high rate for New York City partners at $1,350.

## ARGUMENT

**A.** **The Standard To Be Applied To Motions For Attorney's Fees Under 42 USC § 1988**

Pursuant to 42 U.S.C. § 1988(b), the Court, in its discretion, may award attorneys' fees to the prevailing party in a section 1983 action. The Second Circuit has stated that a prevailing defendant of a section 1983 claim should be awarded its attorneys' fees where the plaintiff's claim was "frivolous, unreasonable, or without foundation." Abeyta v. City of N.Y., 588 F. App'x 24, 25-26 (2d Cir. 2014) (citing Fox v. Vice, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011)); see also Gen. Camera Corp. v. Urban Dev. Corp., 734 F.2d 468, 468 (2d Cir. 1984) (discussing how fees

should be awarded to a prevailing defendant where the plaintiff's claim was "unreasonable and groundless, if not frivolous") (quoting <u>Harbulak v. County of Suffolk</u>, 654 F.2d 194, 198 (2d Cir. 1981)); <u>Carter v. Incorporated Village of Ocean Beach</u>, 759 F.3d 159, 163 (2d Cir. 2014). The Court may also award a defendant attorneys' fees where plaintiff continued to litigate his or her claims after they clearly became frivolous, unreasonable, or groundless. <u>See</u> <u>Panetta v. Crowley</u>, 460 F.3d 388, 399 (2d Cir. 2006). The Court need not determine whether the claim was made in bad faith in order for it to award a defendant's attorneys' fees. <u>See</u> <u>Gen. Camera Corp.</u>, 734 F.2d at 468.

While the Supreme Court of the United States has opined that plaintiff-side attorneys representing themselves may not be entitled to attorney fee awards, it did so to prevent the creation of "a disincentive to employ counsel whenever such a <u>plaintiff</u> considered himself competent to litigate on his own behalf." <u>Kay v. Ehrler</u>, 111 S.Ct. 1435, 1438 (1991) (emphasis added). Further, the rationale has not been applied to pro se defense counsel or firms, like Esposito's. <u>See,</u> <u>Fontanillas-Lopez v. Bauza Cartagena</u>, 832 F.3d 50, 61 (1st Cir. 2016) (stating "[a]ccordingly, every circuit we know to have considered the issue has determined that <u>Kay</u> does not prohibit the award of fees to an attorney who represents his or her own law firm. <u>See</u> <u>Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding</u>, 692 F.3d 888, 897-98 (8th Cir. 2012) (fees under the Employee Retirement Income Security Act); <u>Baker & Hostetler LLP v. United States DOC</u>, 473 F.3d 312, 315, 374 U.S. App. D.C. 172 (D.C. Cir. 2006) (fees under the Freedom of Information Act); <u>Bond v. Blum</u>, 317 F.3d 385, 398-400 (4th Cir. 2003) (fees under the Copyright Act), abrogated on other grounds by <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 136 S. Ct. 1979, 1983, 195 L. Ed. 2d 368 (2016); <u>cf.</u> <u>also</u> <u>Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.</u>, 236 F.3d 214, 218-19 (5th Cir. 2000) (relying on Kay to find that a law firm litigant may collect attorneys' fees for its employees' work under a Louisiana state statute)).

In order to determine if the attorneys' fees claimed are reasonable, courts employ the standard set forth in Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 1939-40 (1983), which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Prevailing parties should make a good-faith effort to exclude fees that are "excessive, redundant, or otherwise unnecessary." Id. at 434. "According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Hernandez v. Berlin Newington Assocs., LLC, 699 F. App'x 96, 96-97 (2d Cir. 2017) (quoting Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)) (internal quotations omitted).

**B.** **The Standards To Be Applied To Motions For Sanctions**
**Under 28 USC § 1927, FRCP 11 and the Court's Inherent Power**

Pursuant to 28 USC § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Further, a court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Ransmeier v Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)).

In considering whether to impose either of these sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999))

To establish bad faith, sanctions under § 1927 and this Court's inherent authority both require a similar showing; "bad faith may be inferred 'only if actions are so completely without

merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Schlaifer Nance, 194 F.3d at 336 (quotations omitted).

Where an attorney knowingly pursues a frivolous claim, like here, a finding of bad faith is warranted. Phonometrics, Inc. v Westin Hotel Co., 350 F.3d 1242, 1248 (Fed Cir 2003).

This Court may also award sanctions pursuant to FRCP 11 which prohibits filing actions for improper purposes, including harassment. Rule 11 states, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FRCP 11.  Rule 11 further states:

> (c) Sanctions.
>
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee

FRCP 11.  It is clear from the overwhelming documentary evidence adduced herein that Plaintiffs filed this complaint to vexatiously harass and annoy defendants.  Sanctions should be awarded.

**C.**    **The First Department's June 16th Order Rendered This Action Frivolous From The Start**

As this Court correctly reasoned, the First Department's June 16th Order rendered Plaintiffs' Amended Complaint baseless as a matter of law.  Plaintiffs knew this and moved to vacate the June 16th Order before they even filed any of the three specious complaints, including the amended complaint signed by Eric Berry and Joseph Paykin.

Plaintiffs moved the First Dept. to vacate the June 16 Order and in support of their motion, Plaintiffs' counsel submitted an affirmation describing the collateral estoppel effect of the June 16 Order as currently written.  See, Affirmation of Eric Berry, dated June 19, 2017, at ¶¶ 4, 6 (stating "the Original June 16, 2016 Order, like most of this Court's motions decisions [sic], did not set forth any reasoning, <u>and therefore would have had no collateral estoppel effect with respect to the underlying issues which may arise again in related litigation in which the Knopfs seek to recoup the losses that occurred when the 67th Street property was sold.</u>" (emphasis added)

Defendants repeatedly explained the lack of merit to opposing counsel and certainly the motion letter to Judge Wexler on the original Eastern District complaint and Esposito's two motions to dismiss put Plaintiffs on notice that their claims were without any merit.  Plaintiffs, and their counsel, Eric Berry, Joseph Paykin and Gary Greenberg, knew, or should have known, that the entire conspiracy claim, and amended complaint as a whole, was baseless.[3]

**D.**    **Plaintiffs' Litigation Strategy Centered On Harassment And Reputational Harm**

Before Plaintiffs even filed the Eastern District version of their complaint, they set out to harass Esposito.  Sending two burly process servers to Esposito's bucolic home at 6:30 a.m. the Friday of Fourth of July weekend made clear that Plaintiffs intended to harass Esposito from the start.  Plaintiffs did this despite listing Esposito's office address on the process served.  Moreover,

---

[3]    The Court's dismissal of the conspiracy claim is also dispositive of the fraud on the court claim to the extent there was no order of the court effected by the alleged conspiracy.

Plaintiffs had no problem serving a litigation hold order before the 6:30 a.m. debacle that terrified Esposito's two young daughters. Clearly such action is only intended for harassment. <u>See</u>, Espo Decl. ¶ 7.

Following up on the threatening and harassing process server trick, Plaintiffs' counsel, Eric Berry, threatened Esposito on numerous occasions. First, Berry claimed Sanford implicated Esposito in a conspiracy during Sanford's deposition. <u>Id</u>. at Ex. A, p. 00001. Because Esposito denied that there was any conspiracy, Berry sent a video of Michael Sanford's deposition testimony and stated, threateningly, "watch the whole thing, your name is mentioned at the end. <u>But that is just the tip of the iceberg</u>." <u>Id</u>. (emphasis added). It is important to note that during the deposition, Michael Sanford, and Phillips' attorney, ask Berry if he is videotaping the deposition with his phone and Berry responds that he is not, that he is texting his co-counsel, Gary Greenberg. The exchange essentially looks like this on the deposition transcript and in the iphone video:

> MR. SANFORD
> Are you videotaping me right now?
> MR. BERRY
> I'm texting Gary Greenberg. He's my co-counsel. Sorry. I'll move it down here.
> MS. NADEL: Is it your statement on the record that you were not videotaping him?
> MR. BERRY: No, of course not. If I wanted to videotape, I would have had a videographer.
> MR. SANFORD
> You would have had to notice me for that.
> MS. NADEL: If you videotaped him, I ask that you delete it now.
> MR. BERRY: I didn't videotape him. I told you I was texting Gary Greenberg, my co-counsel.
> MS. NADEL: I just ask that you delete it.
> MR. SANFORD: I also ask that you put on the record that you did not videotape him.
> MR. BERRY: I did not videotape him.

<u>See</u>, Espo. Decl. Ex. D, Sanford 6/30/17 Dep. Transcript at pp. 36-37.

Berry did, in fact, impermissibly and surreptitiously videotape the June 30, 2017 Sanford deposition, or at least parts of it. <u>Id.</u> at Ex. A, p. 00001. He then sought to use that videotape to

threaten and harass Esposito, as described above. Id. Moreover, Berry threatened Esposito and

Esposito's wife with allegations of criminal and professional complaints unless Esposito conceded

what was not true, that there was a conspiracy to deprive Plaintiffs of their civil rights, stating, in

sum and substance, that he didn't care who won or lost, that he couldn't refrain from having a

reputationally harmful article published and that this Court viewed this matter as a criminal case.

Id. at Ex. A, p. 00015.  Esposito refused to capitulate and in retaliation, Plaintiffs maintained this

frivolous action.

Other actions establishing bad faith and the vexatious nature of this, the eleventh lawsuit

involving Sanford, his entities or their counsel, include, but are not limited to:

- Using allegations of criminal conduct to gain leverage in a civil suit; Espo Decl., Ex A, p. 00015;
- Using surreptitiously recoded deposition testimony to threaten Esposito and instill fear of reputational harm; Espo. Decl., Ex. A, p. 00001.
- Lying on the record during a deposition and denying the surreptitious videotaping; Espo. Decl., Ex. D.
- Threatening to have Esposito arrested; Espo. Decl., Ex. A, p. 00020;
- Threatening pre-trial publicity to instill fear of reputational harm; Espo. Decl., Ex. A, p. 00015;
- Filing and maintaining this patently frivolous federal lawsuit over a meaningless procedural call that had no effect on any court order;
- Vexatiously multiplying proceedings;
- Impermissibly using this action as a collateral attack on First Department decisions, conduct for which Plaintiffs' counsel has been previously sanctioned; Mark v. Lenfast, 80 A.D.3d 426, 427 (1st Dept. 2011) (in case seeking to vacate order based on fraud on the court, stating "[f]inally, we note that this is plaintiff's fourth attempt at litigating essentially the same dispute that was resolved unfavorably to him over seven years ago. The record is replete with plaintiff's contradictory positions asserted in a series of filings over the years. On the third such action, Supreme Court sanctioned both plaintiff and his counsel [Eric Berry]. The sanctions for "frivolous conduct" were affirmed in 2009 by this Court. The instant appeal is no less frivolous."); and,
- Writing that the plan is to spread "bribery" allegations in other venues. DKT 75-4, p.2.

Plaintiffs and their counsel should be sanctioned for this outrageous conduct.

**E.**     **Plaintiffs Continued Litigating This Action Long After They Knew It Was Doomed**

On November 2, 2017, the First Dept. denied Plaintiffs' motion to vacate the June 16th Order Plaintiffs understood was fatal to their case. See, e.g., DKT 59. To the extent Plaintiffs did not previously grasp the fatality of the First Dept.'s June 16th Order, the November 2nd Order should have put them on notice, considering they made the same arguments to the First Department on the motion to vacate that they made in this lawsuit. Id.

Nevertheless, Plaintiffs only increased their campaign of harassment subsequent to the First Dept.'s November 2, 2017 rejection of essentially the same specious arguments they made here.

**F.**     **Only An Award of Fees And Sanctions Can Deter Plaintiffs**
**And Their Counsel From Additional Frivolous Litigation**

Plaintiffs' threats continue unabated. Esposito has attempted, in good faith, to resolve any disputes both before and after prevailing on Esposito's motion to dismiss. Plaintiffs' counsel has been sanctioned for impermissibly using collateral lawsuits to attack state court decisions[4], yet continues to do so. Indeed, this Court has found that Plaintiffs engaged in similar bad faith conduct in the related Meister Seelig case. See, Knopf v. Meister Seelig & Fein, No. 15cv5090, 2016 U.S. Dist. LEXIS 37079, ** 6-7 (SDNY, Mar. 22, 2016) (stating "[w]ith respect to PHC, the notice of pendency was filed in bad faith . . . . Furthermore, the filing of the Second Notices was an attempt by plaintiffs to, in effect, reverse the state court's decision to cancel the Initial Notices, and to obtain the equivalent of an attachment on the Properties pending judgment, an improper use of lis pendens.").

---

[4]     Mark v. Lenfast, 80 A.D.3d 426, 427 (1st Dept. 2011) (in case seeking to vacate order based on fraud on the court, stating "[f]inally, we note that this is plaintiff's fourth attempt at litigating essentially the same dispute that was resolved unfavorably to him over seven years ago. The record is replete with plaintiff's contradictory positions asserted in a series of filings over the years. On the third such action, Supreme Court sanctioned both plaintiff and his counsel [Eric Berry]. The sanctions for "frivolous conduct" were affirmed in 2009 by this Court. The instant appeal is no less frivolous.").

Despite past sanctions, and determinations by this Court that Plaintiffs have acted in bad-faith in related matters, Plaintiffs and their counsel continue their conduct unabated. They have threatened to continue to do so and have taken actions in furtherance of those threats, including Berry's involvement in related specious lawsuits in Nassau County and New York County.

Plaintiffs and their counsel have shown their express purpose is reputational harm, stating, among other things, "obviousy [sic], as you are aware, our intention here is to spin out the bribery story, lose something here, and appeal it so that the esposito-ringel bribery stuff gets disclosed into the second department. but you know this already." (DKT 75-4, p.2). They have surreptitiously and impermissibly recorded a deposition and then lied about recording it on the record. Espo. Decl., Ex. A, p. 00001 (a copy of the actual video will be provided to the Court upon request). They have commingled threats of civil and criminal wrongdoing to gain leverage in this proceeding and have threatened to have Esposito arrested. Espo. Decl., Ex. A, pp. 00015, 00020. Nothing other than significant sanctions will deter this conduct.

**G. Plaintiffs Attorneys Should Be Jointly Liable For Fees and Sanctions**

Pursuant to 28 USC § 1927, Esposito requests that Plaintiffs and their counsel, Eric Berry, Joseph Paykin and Gary Greenberg, be held jointly and severally liable for any fees or sanctions awarded.

**CONCLUSION**

For the foregoing reasons, this Court should award Esposito his attorneys fees, costs and other appropriate sanctions together with such other and further relief as to this Court seems just and proper.

Dated: December 27, 2017  
      New York, NY

Respectfully submitted,  
/s/ Frank Esposito

_____

ESPOSITO, PLLC  
FRANK ESPOSITO (FE-2558)  
275 Madison Avenue, 14th Floor  
New York, NY 10016  
fesposito@eplawllc.com