UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
 :
NORMA KNOPF and MICHAEL KNOPF, :
 : No. 17 CV 5833 (DLC) (SN)
        Plaintiffs, : ECF CASE
 :
v. :
 :
FRANK ESPOSITO, DORSEY & WHITNEY, LLP, :
NATHANIEL ACKERMAN, EDWARD FELDMAN, :
and MICHAEL SANFORD, :
 :
        Defendants. :
 :
-----------------------------------------------------------------X

# DEFENDANT ESPOSITO'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR FEES AND SANCTIONS

ESPOSITO, PLLC
FRANK ESPOSITO
275 Madison Avenue
14th Floor
New York, NY  10016
fesposito@eplawllc.com
Telephone:  (212) 537-3896
Facsimile:  (646) 304-5624

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES.......................................................................................... iv

PRELIMINARY STATEMENT..................................................................................... 1

REPLY............................................................................................................................. 2

    A.    Plaintiffs' Lawsuit Against Defendants Was Frivolous
         And Objectively Unreasonable................................................................. 2

    B.    Plaintiffs' Motivation In Pursuing This Lawsuit Was Improper.............. 3

    C.    Plaintiffs Litigated This Case In Bad Faith.............................................. 5

    D.    This Court May Award Fees And Sanctions
         Under Several Legal Authorities.............................................................. 7

    E.    Granting Defendants' Motions Will Hopefully Deter
         Plaintiffs' Abusive Conduct And Conserve Judicial Resources............. 9

    F.    No Hearing Is Necessary To Calculate An Award.................................. 10

CONCLUSION................................................................................................................ 10

## TABLE OF AUTHORITIES

**Federal Cases**

Abeyta v. City of N.Y., 588 F. App'x 24 (2d Cir. 2014) ............................................ 8

Fontanillas-Lopez v. Bauza Cartagena, 832 F.3d 50 (1st Cir. 2016) ........................ 8

Gust, Inc. v. AlphaCap Ventures, 226 F. Supp. 3d 232 (S.D.N.Y. 2016) (DLC)............... 7, 9, 10

Kay v. Ehrler, 111 S.Ct. 1435 (1991) ........................................................................ 8

Knopf v. Esposito, 17cv5833(DLC)
2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017)............................................................ 2, 3, 4

Knopf v. Meister Seelig & Fein, No. 17cv1554, 2017 WL 6210364
(2d Cir., Dec. 5, 2017)............................................................................................. 3, 4

Knopf v. Meister Seelig & Fein,
15cv5090(DLC), 2017 WL 1393731 (S.D.N.Y. April 21, 2017)............................ 4

Knopf v. Meister, Seelig & Fein, LLP, 15cv5090(DLC)
2015 WL 6116926 (S.D.N.Y. Oct. 16, 2015) ......................................................... 4

Knopf v. Phillips, 16cv6601(DLC)
2016 WL 7192102 (S.D.N.Y. Dec. 12, 2016) ........................................................ 4

Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986)................................................ 7

United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338 (2d Cir. 1991)................... 7

Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584 (2d Cir. 2016).................. 7

**State Cases**

Manhattan Leasing Entps. v. Esposito, No. 160455/2017 (SH)
(Supreme Court, Nassau County)............................................................................ 9

Mark v. Lenfast, 80 A.D.3d 426 (1st Dept. 2011) ................................................... 4

**Federal Rules Of Civil Procedure**

Federal Rules of Civil Procedure 8................................................................................ 3

Federal Rules of Civil Procedure 11.............................................................................. 1

Federal Rules of Civil Procedure 26 ................................................................................. 5

**Federal Statutes**

28 USC § 1927 ............................................................................................................. 1, 7

42 U.S.C. § 1983 .......................................................................................................... 1, 8

42 U.S.C. § 1988 ............................................................................................................. 7

**New York Rules of Professional Conduct**

New York Rule of Professional Conduct 3.1 .................................................................. 5

New York Rule of Professional Conduct 3.4(e) .............................................................. 5

New York Rule of Professional Conduct 3.6 .................................................................. 5

New York Rule of Professional Conduct 4.4 .................................................................. 5

Frank Esposito, submits this reply memorandum of law in support of his motion for attorney fees, costs and sanctions pursuant to this Court's inherent power, 42 USC § 1988, 28 USC § 1927 and Federal Rules of Civil Procedure 11. Any factual averments are made under penalty of perjury.

## PRELIMINARY STATEMENT

This action and the related cases present this Court with the rare instance where an attorney admits in writing the true and improper motivations for vexatiously multiplying court proceedings. In opposing Defendants' motions for fees and sanctions, Plaintiffs fail to address substantial evidence demonstrating bad faith, harassment and vexatiousness.

Plaintiffs' opposition to this motion removes any doubt that this case is frivolous and that Plaintiffs continue to litigate it in bad faith  The considerable evidence of improper motive and conduct cited by Defendants goes beyond a few isolated or unconnected incidents and represents the extraordinary case where an attorney repeatedly describes improper conduct in writing.

It is indisputable that First Dept. decisions removed any encumbrances on the sale of PHC in 2015. Indeed, the First Dept. reiterated that there were no encumbrances on PHC's sale in its June 16, 2016 decision, removing any doubt Plaintiffs' had, feigned or otherwise, long before they filed their initial complaint in the EDNY or here. Plaintiffs argue that PHC's purchaser, Mr. Phillips, and/or his title company, misinterpreted First Dept.'s rulings and that Plaintiffs were somehow entitled to have that misinterpretation prevent the sale of PHC, even in the absence of a final judgment.

Plaintiffs' pleadings make clear that they knew the First Dept.'s June 16th Order was fatal to their claims and thus sought to vacate it using the same specious conspiracy arguments they continue to assert. The First Dept. disagreed that there was a basis to find a fraud on the court and denied Plaintiffs' motion to vacate while this case was still pending before this Court. Nevertheless, Plaintiffs pressed on with this case, despite ample opportunity, and numerous written requests, to withdraw it.

Plaintiffs continue to use this case as a vehicle to harass and malign Defendants, here and in other related proceedings. Plaintiffs do not rebut significant evidence that belies their stated intention

of merely attempting to redress Plaintiffs' alleged damages; damages that, in the absence of a final judgment, are non-existent.

Plaintiffs and each of their counsel, either by aiding in the research, drafting, decisions on the commencement or maintenance of the multiplicitous actions, or signing the pleadings,[1] participated in this wrongful conduct. Plaintiffs' stated motivations for bringing, and maintaining, this case are belied by the unrebutted evidence of vexatious and harassing acts that expressly, cumulatively, and in the context of Plaintiffs' past pattern and practice, establish a blatant disregard for the Federal Rules, New York Rules of Professional Conduct, court Orders and this Court.

Plaintiffs and each of their counsel, jointly and severally, should be required to pay Defendants' attorney's fees, and should be sanctioned an additional amount sufficiently significant to deter the unmitigated conduct that past sanctions have not been able to prevent.

## REPLY

**A.    Plaintiffs' Lawsuit Against Defendants Was Frivolous And Objectively Unreasonable**

No litigant could have had a reasonable expectation of success in prosecuting this case. As this Court found, the First Dept. removed any restraints on the sale of PHC in its series of 2015 orders, reiterated again by the First Dept. on June 16, 2016. As is relevant here, this Court found that:

- "The October 6, 2015 decision again affirmed the cancellation of the notices of pendency." Knopf v. Esposito, 17cv5833(DLC), *2, fn. 1, 2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017);
- "On November 12, 2015, the Appellate Division issued an order rejecting the Knopfs' motion for a preliminary injunction restraining the sale of PHC."; Id.
- "As the Revised June 2016 Order found, [the] TRO had been vacated 'once plaintiffs' prior motion for a preliminary injunction was denied. . . .'" Id. at * 7 (The June 16, 2016 First Dept. Order states, in relevant part "the TRO was vacated once plaintiffs' prior motion for a preliminary injunction was denied.") Id. at *5.
- Plaintiffs have not been able to obtain a final judgment. Id. at *2.

---

[1]    Mr. Paykin seems to assert that he only signed the EDNY complaint and that Mr. Berry left Paykin's electronic signatures on the SDNY complaints without permission. Mr. Paykin, however, acknowledges receiving Esposito's motion to dismiss the amended complaint, sent to counsel of record, without objection. See, DKT 97 at ¶¶ 4, 6(ii).

- "[T]he harm that the Knopfs assert that they experienced from the sale of PHC is solely attributable to orders issued by judges of the New York State courts in 2015." Id. at *7.

<u>Plaintiffs' theory that they were somehow entitled to a misinterpretation of First Dept. orders removing encumbrances to PHC's sale, particularly in the absence of any judgment, coupled with past findings that Plaintiffs were not entitled to a constructive trust, attachment or lis pendens (in part by this Court no less), is the definition of a frivolous complaint</u>. Regardless of whether PHC's purchaser or his title company believed there were encumbrances to PHC's sale, it is now well-settled that there were none. This is the law of the case. No reasonable attorney fit to practice law would press a case such as this, where First Dept. decisions rendered it meritless before any actions were filed against Defendants. It is conduct that warrants fees and sanctions.

B. **Plaintiffs' Motivation In Pursuing This Lawsuit Was Improper**

Plaintiffs' opposition fails to address substantial documentation of improper motive. The extraordinary evidence establishing improper motive includes:

- Counsel's statement, in writing, that "**obviousy [sic], as you are aware, our intention here is to spin out the bribery story, lose something here, and appeal it so that the esposito-ringel bribery stuff gets disclosed into the second department**. but you know this already." (DKT 75-4, p.2);
- Plaintiffs' actions in furtherance of the above-referenced improper threat, including losing this case and spreading the specious allegations in a frivolous appeal to the Second Circuit. Indeed, despite not having anything to do with Plaintiffs' case against Meister Seelig, and not being a part of that record, Plaintiffs rehash their allegations against Defendants in their recently filed Meister Seelig reply brief on appeal.[2] Further, contrary to the Declaration of Eric Berry submitted in opposition to this motion (DKT 100, 101, ¶ 34 stating in relevant part "the Knopfs have honored their agreement not to sue Esposito's wife or use her name in their filings in the briefs. . ."), Plaintiffs gratuitously include Esposito's wife's name all over the record. Knopf v.

---

[2] Stating, in relevant part, and *passim*: "[t]hat sale was facilitated, as the defendants in the *Knopf v. Esposito* case acknowledge, by advice that a First Department Court attorney, [redacted] - *who was married to one of Sanford's lawyers, Frank Esposito* -provided in a memorialized phone conference (*Knopf v. Esposito*, Dkt., *Doc. No. 62-15*) she had with two other lawyers for Sanford. The Knopfs were excluded from this call. In this *ex parte* communication, [redacted] advised Sanford's lawyers that two orders of First Department [sic] that expressly required the proceeds from any sale of the 67th Street property be paid and maintained in escrow, <u>did not mean what they said</u>. *Knopf v. Meister Seelig & Fein*, No. 17cv1554, 2017 WL 6210364 (2d Cir., Dec. 5, 2017) (emphasis added). <u>Counsel's inability, or unwillingness, to accept the First Dept.'s decisions to remove restraints on PHC's sale, even now, and in a filing with the Second Circuit no less, is not only troubling, but demonstrates a particular lack of fitness to practice law</u>.

3

Meister Seelig & Fein, No. 17cv1554, 2017 WL 6210364 (2d Cir., Dec. 5, 2017).  See also, e.g., DKT 100, at ¶¶ 19, 20; DKT 101 at ¶ 19.

- Counsel's statement to another Sanford attorney that "I sue all of Sanford's attorneys." DKT 84-14;

- Counsel's statement, in writing, that "this is really going to hurt you and others." DKT 84-4;

- Filing a 64 page invective filled, scurrilous amended complaint (the third in this conspiracy saga), notwithstanding that FRCP 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." DKT 1, 12; FRCP 8(a)(2);

- Plaintiffs' knowledge that a simple procedural phone call to the clerk's office is not improper, particularly as evidenced by his own more egregious conduct in identifying and routinely calling a particular clerk. DKT 84-10;

- Failing to withdraw the amended complaint when faced with the First Dept.'s November 2, 2017 Order denying Plaintiffs' motion to vacate the First Dept.'s June 16, 2016 Order reiterating the absence of any encumbrances on PHC's sale - made with the same arguments Plaintiffs supply here, over and over despite repeated judicial rejection. DKT 59;[3]

- Plaintiffs' pattern and practice of filing lawsuits against Sanford attorneys and those related to PHC's sale, including Meister Seelig, Dechert, McGuire, Dorsey, Feldman, Akerman, Phillips and Esposito - all of which remaining claims this Court has dismissed on motions. Knopf v. Meister Seelig & Fein, 15cv5090(DLC), 2017 WL 1393731 (S.D.N.Y. April 21, 2017), Knopf v. Esposito, 17cv5833(DLC), 2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017); Knopf v. Phillips, 16cv6601(DLC), 2017 WL 7192102 (S.D.N.Y. Dec. 12, 2017); and,

- Impermissibly using this action as a collateral attack on First Dept. decisions, conduct for which Plaintiffs' counsel has been previously sanctioned; Mark v. Lenfast, 80 A.D.3d 426, 427 (1st Dept. 2011) (in case seeking to vacate order based on fraud on the court, stating "[f]inally, we note that this is plaintiff's fourth attempt at litigating essentially the same dispute that was resolved unfavorably to him over seven years ago. The record is replete with plaintiff's contradictory positions asserted in a series of filings over the years. On the third such action, Supreme Court sanctioned both plaintiff and his counsel [Eric Berry]. The sanctions for "frivolous conduct" were affirmed in 2009 by this Court. The instant appeal is no less frivolous." [i.e., counsel filed TWO frivolous appeals of which the court was aware]).

This Court has previously provided guidance to Plaintiffs, directing them to utilize state court procedures. Knopf v. Meister Seelig & Fein, 15cv5090(DLC), 2015 WL 6116926 *3 (S.D.N.Y. Oct. 16, 2015). Indeed, this Court previously held that "[w]hile Plaintiffs contend that this federal action and its new Notices are wholly independent of the state court litigation since they are prompted solely

---

[3] Plaintiffs understood the fatality of the First Dept.'s June 16 Order and the subsequent November 2, 2017 denial of Plaintiffs' motion to vacate it. Indeed, Plaintiffs thought it sufficiently important to allege that they "have moved to vacate that revised version [of the First Dept.'s June 16th Order] and both that motion and the *Knopf v. Sanford* action were unresolved when this action was commenced an [sic] remain unresolved as of September 2, 2017. Amended Complaint at ¶ 186 (DKT 12). When Esposito brought the November 2nd denial to Plaintiffs' attention, they still refused to withdraw. See, DKT 59, 60.

4

by the fraudulent conveyance, that argument fails." Id. Further, this Court stayed cancellation of the notices of pendency to allow Plaintiffs to "return to state court and make any arguments made here that they believe may be persuasive." Id. Despite this Court's prior guidance, Plaintiffs again utilized the Federal Courts to address grievances they have with the state courts. See also, Amd. Compl. ¶ 41.

C.     **Plaintiffs Litigated This Case In Bad Faith**

Like the evidence of improper motive, Plaintiffs' fail to address substantial evidence of bad faith. Evidence showing Plaintiffs' bad faith includes:

- Using allegations of criminal conduct (as described above) to gain leverage in a civil suit, in violation of New York Rule of Professional Conduct ("NYRPC") 3.4(e); DKT 87-1, p. 00015;
- Using surreptitiously recorded deposition testimony to threaten Esposito and instill fear of reputational harm in violation of NYRPC 4.4; DKT 87-1, p. 00001;
- Lying on the record during a deposition and denying the videotaping; DKT 87-4;
- Threatening to have Esposito arrested for moving to quash a subpoena; DKT 87-1, p. 00020;
- Threatening pre-trial publicity over this action to instill fear of reputational harm in violation of NYRPC 3.6 and 4.4; DKT 87-1, p. 00015;
- Filing and maintaining this patently frivolous federal lawsuit over a meaningless procedural telephone call that had no effect on any court order, in violation of NYRPC 3.1(b);
- Vexatiously multiplying proceedings and advancing non-meritorious claims in violation of NYRPC 3.1(a);
- Using an expert report in opposition to motions to dismiss that opined on First Dept. wording, in violation of FRCP 26. DKT 37-12;
- Impermissibly using this action as a collateral attack on First Department decisions, conduct for which Plaintiffs' counsel has been previously sanctioned; Mark v. Lenfast, 80 A.D.3d 426, 427 (1st Dept. 2011) (in case seeking to vacate order based on fraud on the court, stating "[f]inally, we note that this is plaintiff's fourth attempt at litigating essentially the same dispute that was resolved unfavorably to him over seven years ago. The record is replete with plaintiff's contradictory positions asserted in a series of filings over the years. On the third such action, Supreme Court sanctioned both plaintiff and his counsel [Eric Berry]. The sanctions for "frivolous conduct" were affirmed in 2009 by this Court. The instant appeal is no less frivolous.");
- Writing that the plan is to spread "bribery" allegations in other venues in violation of NYRPC 3.1 and 4.4. DKT 75-4, p.2;
- Showing the propensity to create issues where there are none, just to "fight." See, Knopf v. Phillips, 16cv6601, DKT 121-3, pp. 67, ll. 8-13; 68, ll. 5-9; and,
- Showing Plaintiffs' vindictive, retaliatory nature, by notifying Esposito, three minutes after filing this motion, of the intention to file another action against Esposito, "as [] promised."

5

Other instances of improper conduct include Plaintiffs knowingly pleading demonstrably false facts and otherwise attempting to mislead this Court in violation of New York Rule of Professional Conduct 3.1(b)(3).  For example, in Paragraph 14 of the Amended Complaint, Plaintiffs state "[o]n June 26, June 29 and June 30, 2017, the Knopfs took the depositions of, respectively, former Justice McGuire, Feldman, Sanford, Esposito, Akerman and Esposito's wife, the Court attorney. . . ."

Plaintiffs actually took the depositions of Akerman, Esposito and Esposito's wife on August 11th and 15th, respectively.  (See, DKT 49-3, DKT 62-26, DKT 49-4)  At first glance the false notion that Plaintiffs took these deposition in June instead of mid-August seems innocuous.  Indeed, out of context it might be.  In the shadow of Plaintiffs' cumulative pattern of misconduct, however, and in consideration of their actions in the aggregate, one can glean the true intention - to have this Court believe that depositions Plaintiffs claim give rise to this action were taken prior to filing the original Eastern District Complaint on July 2, 2017 and long before the original Southern District complaint filed here on August 2, 2017.  Plaintiffs filed before deposing Akerman, Esposito and his wife.

Other demonstrably false assertions by Plaintiffs include:

- "The Knopfs did not delay this case in any fashion, or engage in any motion practice at all, let alone any conduct having a dilatory effect." DKT 99 at p. 3.  It is important to note that in this case alone, Plaintiffs requested additional time in several instances.  See, e.g., DKT 17, 60, 84-13, 91.  More importantly, Plaintiffs filed an amended complaint in response to Esposito's original motion to dismiss.  (DKT 12).  The amended complaint did not address the obvious legal deficiencies described in the two prior complaints (both EDNY and SDNY), but instead, added more scurrilous material.  (compare DKT 1 and DKT 12).  Further, Plaintiffs repeatedly filed papers late, over the page limit, filled with irrelevant or improper "evidence," or filed "amended" or "corrected" pleadings, requiring the reader to attempt to discern the differences after plowing through the original.  See, e.g., DKT 38, 63, 64, 68, 101;
- "[T]he Court Attorney who authored the advisory ruling. . . ."  Amd. Cmplt., DKT 12, ¶¶ 107, 108, 182.  Esposito's wife never "authored" an opinion.  No such written opinion exists, nor was Esposito's wife the originator of the fact that interim relief is only interim;
- "Esposito has blocked all inquiry into his financial relationship with Sanford."  DKT 63, p. 3, fn. 3.  But see, DKT 67 at ¶¶ 8, 9 (Esposito provided testimony, the engagement agreement listing the fee amount and a bank statement);
- "Esposito was paid handsomely for devising and implementing this corrupt scheme, receiving $102,500 out of the proceeds of the sale, and a total of $107,500."  DKT 63, p. 2.  This is patently

- false and is an allegation contained neither in the Amended Complaint nor in any of the documents on which the Amended Complaint relies. See DKT 67, ¶ 6; and,
- Claiming there was an "ex parte" phone call on January 12, 2016 when no motions were pending and all motions had been decided months prior.

Plaintiffs' conduct, and the conduct of their attorneys, should not be permitted to continue unabated.

### D.   This Court May Award Fees And Sanctions Under Several Legal Authorities

An award of attorneys' fees under 28 USC § 1927 is appropriate "when there is a finding of conduct constituting or akin to bad faith." Gust, Inc. v. AlphaCap Ventures, 226 F. Supp. 3d 232, 248 (SDNY 2016) (DLC), citing Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016) (citation omitted). Bad faith is evident where "[t]he attorney's actions [are] so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id.

Multiplication of proceedings need not be in one case, as Plaintiffs would have this court believe on p. 2 of their opposition brief. DKT 99, p. 2. See, Gust, 226 F. Supp. 3d at 251 (in granting award under § 1927, reasoning that despite knowledge of meritless nature of case, "counsel litigated the Texas and New York Actions for another ten months.").

Regarding this Court's inherent power to sanction, the Second Circuit has opined that:

> Even though the subject of sanctions is a distasteful one for any court, increasing tensions in and occasional abuses of the judicial system have prompted both judges and legislators to turn toward sanctions as a means of improving the litigation process. . . . Indeed, the sources of judges' sanctioning power are diverse. . . .

Oliveri v. Thompson, 803 F.2d 1265, 1271 (2d Cir. 1986) (holding that "[u]nder the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (citations omitted). See also, United States v. Int'l Bhd. of Teamsters, 948 F.2d at 1345.

Plaintiffs' distinguishable citations notwithstanding, 42 U.S.C. § 1988(b) also provides a basis

for Defendants' recovery as prevailing parties. Abeyta v. City of N.Y., 588 F. App'x 24, 25-26 (2d Cir. 2014). While the Supreme Court of the United States has opined that plaintiff-side attorneys representing themselves may not be entitled to attorney fee awards, it did so to prevent the creation of "a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf." Kay v. Ehrler, 111 S.Ct. 1435, 1438 (1991) (emphasis added). Further, the rationale has not been applied to pro se defense counsel or firms, like Esposito's. See, Fontanillas-Lopez v. Bauza Cartagena, 832 F.3d 50, 61 (1st Cir. 2016) (stating "[a]ccordingly, every circuit we know to have considered the issue has determined that Kay does not prohibit the award of fees to an attorney who represents his or her own law firm.").

Here, it was Esposito, PLLC that was engaged to perform services and received the fee. Plaintiffs should not be able to avoid a fee award because they styled their claims against Esposito for the improper purpose of maligning and defaming him. If the case wasn't so frivolous, Esposito would have hired counsel to defend himself. Having successfully dismissed many §1983 actions while representing the New York City as an Assistant Corporation Counsel, including dismissals before this Court, Esposito was confident he could be as successful, but more efficient than hired counsel.

It is rare that a Court has such direct evidence of wrongful conduct, as is offered by Defendants here. Even one or two instances of improper conduct would be sufficient for this Court to sanction Plaintiffs and their attorneys, yet here, there is significant evidence. Paykin's and Greenberg's declarations notwithstanding, Eric Berry makes clear in his declaration that they participated in this lawsuit. See, DKT 100 at ¶¶ 3, 22, fn. 3. It is indisputable that Paykin's electronic signature appears on all three complaints (EDNY and SDNY). See, DKT 1, 12; but see fn. 1, supra. New York Rule of Professional Conduct 8.4(a) prohibits knowingly assisting in violations or attempted violations of the rules. Further, Paykin concedes that he received the motion to dismiss the amended complaint and motion for fees and sanctions, as did Greenberg and Berry, but Plaintiffs did not withdraw this case. See, DKT 97, ¶ 6.

This is conduct that violates the New York Rules of Professional Conduct, evinces bad faith and justifies the imposition of fees and sanctions.

E.  **Granting Defendants' Motions Will Hopefully Deter Plaintiffs' Abusive Conduct And Conserve Judicial Resources**

It is apparent that Plaintiffs' "instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation when faced with even frivolous . . . lawsuits." Gust, 226 F.Supp. 3d at 245. Plaintiffs have brought claims against, among others, Meister Seelig, Phillips, Akerman, Dorsey, Feldman, Esposito, McGuire and Dechert. Each of those claims has either been dismissed by this Court or withdrawn (in the case of Dechert and McGuire, evidently settled for a payment of $265,000 and relinquishment of a claim to $365,000).[4] Berry Decl., DKT 101 at ¶ 11.

Plaintiffs and their counsel have threatened additional lawsuits and administrative complaints and have acted upon such threats. Further, Plaintiffs' counsel is also counsel to Manhattan Leasing Enterprises which has commenced a turnover proceeding against Esposito for the PHC funds currently escrowed with Dechert but which MLE believes belong to it based on a purported judgment against Sanford. See, e.g., Berry Decl. 100-18 at ¶ 26; see also, Manhattan Leasing Entps. v. Esposito, No. 160455/2017 (SH), New York County Supreme Court at ECF #s 21, 24, 30. The case is frivolous and a motion to dismiss is pending.

The actions described herein, in other motion papers and Co-Defendants' pleadings, continues further across the boundaries of permissible conduct. Plaintiffs' counsel has been admonished and sanctioned previously. This Court has found bad faith and dismissed many of the claims filed by Plaintiffs. Only a significant award of fees and sanctions could possibly deter future conduct.

---

[4]  Dechert evidently settled to avoid the nuisance costs of Plaintiffs' suits. See, Affidavit of Michael H. Sanford, dated Dec. 6, 2017, submitted in Knopf v. Phillips, 16cv6601(DLC), DKT 209 at ¶ 17 (stating "Gary Mennitt, the partner who took over after James McGuire went to Holwell Shuster, told me candidly in June of this year: 'I didn't want to settle. It wasn't my idea. It's extortion, plain and simple. Management decided that fighting Berry over your remaining $250,000 retainer would cost the firm more than $250,000 and they had enough. So they gave it to him.'").

9

F.   **No Hearing Is Necessary To Calculate An Award**

Plaintiffs controlled the length and expense of this litigation. Plaintiffs chose to file it first in the EDNY, then in the SDNY with an original and amended complaint. Each of Plaintiffs' pleadings is lengthy, cumbersome, often inundated with hundreds of pages of irrelevant evidence, replete with grammatical errors[5] and contradictions in addition to an inordinate amount of frequently misapplied citations and paragraph references. The matter is rendered more complex by the numerous related litigations, relevant evidence and information adduced in these litigations as well as having to force Plaintiffs to comply with the Federal Rules.

Defendants have documented their reduced time and hourly rates. However, Esposito's billable time has increased by 14.6 hours in relation to reviewing Plaintiffs' opposition and preparing this reply, for a total number of hours reduced to 169. The only information necessary is "multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." Gust, 226 F.Supp. 3d at 251-52 (citation omitted). Esposito has reduced his rate from $1,125 to $800 per hr.

## CONCLUSION

For the foregoing reasons, this Court should award Defendants their attorneys fees and sanctions sufficient to deter Plaintiffs' wrongful conduct, together with such other and further relief as to this Court seems just and proper.

Dated: January 18, 2018  
New York, NY

Respectfully submitted,

/s/ Frank Esposito
_____
FRANK ESPOSITO (FE-2558)  
275 Madison Avenue, 14th Floor  
New York, NY  10016  
fesposito@eplawllc.com

---

[5] Indeed, it was Plaintiffs' counsel's grammatical error that Plaintiffs claim derailed the confirmation of JHO Gammerman's report and recommendation - issued nearly two years ago - as alleged by Plaintiffs in paragraph 27 of the amended complaint. DKT 12, ¶ 27. Despite Plaintiffs' claim, the First Department has repeatedly denied Plaintiffs' applications for entry of Judgment.