Nathaniel H. Akerman
Krista E. Bolles
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Defendants DORSEY & WHITNEY LLP and NATHANIEL H. AKERMAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

NORMA KNOPF and MICHAEL KNOPF,           17-CV-05833 (DLC) (SN)

    Plaintiffs,

-v-

FRANK M. ESPOSITO, DORSEY &
WHITNEY LLP, NATHANIEL H. AKERMAN,
EDWARD S. FELDMAN and MICHAEL
HAYDEN SANFORD,

    Defendants.

------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**DORSEY & WHITNEY LLP'S AND NATHANIEL H. AKERMAN'S**
**MOTION FOR ATTORNEYS' FEES**

**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, NY 10019

# TABLE OF CONTENTS

## CONTENTS

I. Preliminary Statement..........................................................................................1

II. Argument ............................................................................................................1

    A.     Plaintiffs Fail to Show That Their Complaint Was Not Frivolous and Do Not Refute Facts Showing Their Counsel Acted in Bad Faith .................1

    B.     Plaintiffs Ignore the Law Interpreting *Kay* Entitling Dorsey to Its Attorneys' Fees under § 1983 ..........................................................................6

    C.     Plaintiffs Vexatiously Multiplied the Proceedings Entitling Dorsey to Its Attorneys' Fees under § 1927 ......................................................................8

III. Conclusion ........................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hensley v. Echerhart*,
   461 U.S. 424 (1983)..........................................................................................................8

*Anderson News, LLC v. American Media, Inc*,
   680 F.3d 162 (2d Cir. 2012)............................................................................................2

*Berry v. Dechert*,
   Index No. 152360/16 .......................................................................................................9

*Chambers v. NADSCO, Inc.*,
   501 U.S. 32 (1991).........................................................................................................10

*DeBauche v. Trani*,
   191 F.3d 499 (4th Cir. 1999) ...........................................................................................9

*Fontanillas-Lopez v. Morell Bauza Caragena & Dapena, LLC*,
   825 F.3d 50 (1st Cir. 2016)..........................................................................................6, 7

*Gust, Inc. v. AlphaCap Ventures, LLC*,
   226 F. Supp. 3d 232 (S.D.N.Y. 2016)..............................................................................9

*Kay v. Ehrler*,
   499 U.S. 432 (1991)......................................................................................................6, 7

*Knopf v. Dechert*,
   16 cv 2044 (S.D.N.Y.) .....................................................................................................9

*Knopf v. Dechert and Pursuit*,
   Index No. 157098/16 .......................................................................................................9

*Knopf v. Esposito*,
   No. 17cv5833(DLC), 2017 U.S. Dist. LEXIS 201830 (S.D.N.Y. Dec. 7, 2017)..........1, 2, 4, 9

*Knopf v. Meister Seelig & Fein, LLP and Pursuit Holdings, LLC*,
   15 cv 5090 (DLC) .......................................................................................................4, 9

*Knopf v. Sanford*,
   Index No. 113227/2009 ...................................................................................................9

*Knopf v. Sanford*,
   Index No. 15074/11 .........................................................................................................9

*Menton v. Experian Corp.*,
    2003 U.S. Dist. LEXIS 12457 (S.D.N.Y. July 21, 2003) ..................................................8

*Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*,
    2014 U.S. Dist. LEXIS 22168 (S.D.N.Y. Feb. 20, 2014) ..................................................8

*Newman & Cahn, LLP v. Sharp*,
    388 F.Supp.2d 115 (E.D.N.Y. 2005) ................................................................................8

*S.N. v. Pittsford Cent. School Dist.*,
    2005 U.S. Dist. LEXIS 42745 (W.D.N.Y. Mar. 9, 2005) .................................................8

*Schneider v. Colegio de Abodgos de P.R*,
    187 F.3d 30 (1st Cir. 1999) ...............................................................................................7

*Tancredi v. Metropolitan Life Insurance. Co.*,
    378 F.3d 220 (2d Cir. 2004) ..............................................................................................2

**Statutes**

28 U.S.C. § 1391 ..........................................................................................................................3

28 U.S.C. § 1391(b) .....................................................................................................................5

28 U.S.C. § 1391(b)(1) ................................................................................................................5

28 U.S.C. § 1391(b)(2) ................................................................................................................5

28 U.S.C. § 1391(b)(3) .............................................................................................................5, 6

28 U.S.C. § 1927 .............................................................................................................1, 8, 9, 10

42 U.S.C. § 1988 ...............................................................................................................1, 6, 10

**Other Authorities**

Local Civil Rule 1.6 ............................................................................................................3, 4, 5

# I. PRELIMINARY STATEMENT

Defendants Dorsey & Whitney LLP and Nathaniel H. Akerman (together, "Dorsey Defendants") submit this memorandum in reply to the opposition of Plaintiffs Norma and Michael Knopf to the Dorsey Defendants' motion for fees and sanctions, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927, and this Court's inherent power to levy sanctions.

# II. ARGUMENT

## A. Plaintiffs Fail to Show That Their Complaint Was Not Frivolous and Do Not Refute Facts Showing Their Counsel Acted in Bad Faith

The Plaintiffs re-argue their motion to dismiss, doubling down on their speculative conspiracy theory and their claim of harm from the brief phone call between Mr. Akerman and Mr. Feldman and the Appellate Division Court Attorney. Br.[1] 7-21. They attempt to relitigate this Court's two core findings from the undisputed record Plaintiffs incorporated into their Complaint:

1. Plaintiffs' "alleged harm stems not from any conspiracy but from orders duly issued in 2015 by the Appellate Division. The January 12, 2016 conversation at the center of the Knopfs' claim concerned orders issued by the Appellate Division in the latter half of 2015. To the extent the Knopfs were unhappy with any of those orders – in particular, the November 2015 Order rejecting the Knopfs' efforts to enjoin the sale of PHC – they were free to take any further steps that state court procedures allowed." *Knopf v. Esposito*, No. 17cv5833(DLC), 2017 U.S. Dist. LEXIS 201830, at *16 (S.D.N.Y. Dec. 7, 2017).
2. "[T]here is no plausible claim of any conspiratorial agreement in connection with the January 12, 2016 conversation," as the complaint failed to allege that: (1) Messrs. Akerman or Feldman knew the Court Attorney with whom they spoke on January 12, 2016, or her relationship to Mr. Esposito; (2) Mr. Sanford directed Messrs. Akerman or Feldman to speak with the Court Attorney (by name or title); (3) any of the alleged conspirators were in a position to route a telephone call to the Court Attorney; (4) the Court Attorney was a member of any alleged conspiracy when she picked up the phone to speak with Messrs. Akerman and Feldman on January 12, 2016; and (5) Messrs. Akerman and Feldman were aware of any plan to improperly obtain information from the Court Attorney. *Knopf* at *17-18.

---

[1] "Br." refers to pages in the Knopfs' Memorandum of Law in Opposition to the Motions for Fees and Sanctions.

Moreover, unlike the case relied upon by Plaintiffs, *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012), where no discovery had taken place, the motion decided by this Court was more akin to a summary judgment motion where all defendants had been deposed. These depositions were properly considered by this Court since they were either incorporated into the pleadings or were relied upon by the Plaintiffs. Thus, this is also not a case like *Tancredi v. Metropolitan Life Insurance. Co.*, 378 F.3d 220, 229 (2d Cir. 2004), relied upon by Plaintiffs, where a single district court case supported a complaint's legal theory. Here, there were no facts supporting the Knopfs' conspiracy allegation. In other words, without facts to support the existence of a harm or a conspiracy, this complaint was frivolous, and as demonstrated below, Plaintiffs' counsel was aware of that fact before forcing the Court to resolve Defendants' motions.

The Plaintiffs do not deny any of the following facts showing that this case was filed as one part of a scorched earth litigation strategy to pummel Mr. Sanford into submission:

- Prior to filing the initial complaint in the Eastern District of New York, Plaintiffs were aware of the Appellate Division's June 16, 2016 Order denying their motion for contempt on the ground that its October 22, 2015 Temporary Restraining Order was vacated once the Plaintiffs' motion for preliminary injunction had been denied. *Knopf* at *5-6, *11-12. This June 2016 Order established that no restraints prevented the sale of the Property as of January 12, 2016, when Defendants Akerman and Feldman telephoned the First Department on behalf of their client to check on the status of the October 22, 2015 Order for interim relief. *Knopf* at *5-10.
- The June 30, 2017 email Plaintiffs' counsel sent to Mr. Sanford threatened to file this lawsuit against attorneys if Defendant Michael Sanford did not settle their dispute, writing, "Figure out a way to end it now[.] You want to make me prove I am serious?" Akerman Dec., ¶ 5, Ex. D. Rather than properly seeking redress for his damages in an ongoing state law action regarding the PHC, Plaintiffs' counsel made clear that this lawsuit was designed "to hurt [Sanford] and others." *Id.*; *see also Knopf* at *16-17. Mr. Berry referred to this lawsuit as "[a] scholar's dream on the absolute immunity afforded non-judicial court employees who wrongly assume a judicial function" and referred to that speculative theory as "a lawyer's law-orgasm." Akerman Dec., ¶ 5; Ex. D.
- On August 7, 2017, just over a week after filing the Southern District complaint, Plaintiffs' counsel engaged in the same activity he claimed to be improper when engaged

in by Mr. Akerman: calling a New York State clerk's office to check on the procedural posture of a case involving Mr. Sanford.[2] Akerman Dec., ¶ 18, Ex. J.
- On September 2, 2017, after having deposed Messrs. Akerman, Esposito, Feldman, Sanford and the Court Attorney, and having found no evidence to substantiate a harm or a conspiracy, *see* Akerman Dec., ¶ 19, Ex. K, Plaintiffs' counsel nonetheless filed the amended complaint.
- On November 23, 2017, Plaintiffs' counsel admitted to another attorney for Mr. Sanford that there was no basis for these lawsuits other than his practice to "sue all of Sanford's lawyers." Akerman Dec., ¶ 24, Ex. N.
- The filing of the complaint was consistent with Plaintiffs' pattern of suing Mr. Sanford's lawyers. Previously, Plaintiffs had sued two of Mr. Sanford's prior law firms, Meister, Selig & Fein LLP and Dechert LLP in separate litigations before this Court along with two actions against Dechert LLP before the New York Supreme Court, New York County. Akerman Dec., ¶ 25.

The evidence also shows that the initial lawsuit filed in the Eastern District of New York was motivated by a judge shopping effort, in violation of Local Rule 1.6 and the federal venue statute, 28 U.S.C. § 1391. Mr. Berry claims that he altruistically filed the complaint in the Eastern District "rather than Manhattan" to "minimize any attention the case might garner." Berry Dec., ¶ 37. Mr. Berry's statement is refuted by the evidence. First, Mr. Berry sent a subsequent email to Esposito on September 22, 2017, threatening Esposito with publicity arising from the case and stating he had "received several calls from Law360.com about this case and have begged – successfully, I believe – that no article be written. How much longer do you think that's going to remain the status quo." Akerman Supp. Dec., ¶ 2, Ex. O. Almost immediately thereafter Mr. Berry bluntly threatened, "[t]here is no way your career survives this." *Id.*

Second, Mr. Berry misrepresented the case on the Civil Cover Sheet filed with the complaint in the Eastern District. The Civil Cover Sheet asks:

---

[2] Peter Lancaster never agreed, as Mr. Berry claims, that he would not challenge Mr. Berry's claim of privilege on the email in which this fact was revealed. Berry Dec., ¶ 25 n. 3. As Ex. 7 to Mr. Berry's Declaration reflects, Mr. Berry claimed that it was "an attorney client communication" that he had "inadvertently sent to Mr. Sanford." Mr. Lancaster simply wrote to Mr. Berry that under the New York rule, he was obligated to notify him of the receipt of the email and that "[w]e are considering a challenge to any claw-back claim;" additionally, he asked Mr. Berry for an explanation of "exactly what the circumstances of delivery were, including all actual and intended recipients of the email, and whether you claim the entire contents are privileged." Berry Dec., Ex. 7. Mr. Berry never responded.

3

> 2.) a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?
>
> b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?

To both questions, Mr. Berry responded, "yes." Akerman Supp. Dec., ¶ 3, Ex. P. Nothing in the complaint supports either answer.

As to the Dorsey Defendants, this case involved nothing more than a brief call to the Appellate Division relating to real estate and legal action over that real estate, all of which occurred wholly in the Southern District. The three New York state court causes of action in the Eastern District complaint lack any connection whatsoever to the Eastern District. As to the conspiracy count, Mr. Berry effectively admits that he made up a basis for venue in the Eastern District. He admits that the only basis for alleging that the conspiracy began in the Eastern District was that Messrs. Sanford and Esposito had "met in connection with boating events on Long Island," that Mr. Esposito has a "place of business . . . in Cold Spring Harbor," and "his residence was in . . . Nassau County." Berry Dec., ¶ 36. Not a single fact was alleged to connect the Eastern District with any agreement to violate the Knopfs' civil rights. Indeed, this Court found that "[t]his allegation [of conspiracy] arises from the telephone conversation Akerman and Feldman had on January 12, 2016 with the Court Attorney, who is an employee of the Appellate Division and also Esposito's wife." *Knopf* at *14.

Mr. Berry also effectively admitted in the Civil Cover Sheet that he knowingly violated Rule 1.6 of the Local Civil Rules of the Southern and Eastern Districts of New York. On the first page of that cover sheet under Block VIII, the form requests "Related Case(s) If Any" as well as the "Judge" and "Docket Number" information. Akerman Supp. Dec., ¶ 3, Ex. P. Mr. Berry filled in this part of the form with the name of the case, "Knopf v. Phillips" and the docket number, "16 Civ. 6601 (S.D.N.Y.)." *Id.* He did not insert the name of the Judge. *Id.* Under

4

Local Rule 1.6 Mr. Berry was not only obligated to notify the Eastern District of the related case but also the "Judges to whom the cases have been assigned." Rule 1.6 (a). He apparently did not want this case to be heard before this Court.

The evidence also shows that with respect to the defendant Feldman, Mr. Berry joined him as a defendant in the Eastern District, knowing that his joinder was improper. The venue statue that applies is 28 U.S.C. § 1391(b), which provides:

> (b) Venue in general. A civil action may be brought in--
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(b)(1) does not apply to Mr. Feldman, who Mr. Berry fully knew resided in New Jersey, not New York, as evidenced by the Summons he filed in the Eastern District listing Mr. Feldman's address as "570 Grand Avenue, Englewood, NJ 07631." Akerman Supp. Dec., ¶ 4; Ex. Q. Section 1391(b)(2) does not apply to any of the defendants since all the events giving rise to the claims occurred in the Southern District and the property that is the subject of the action is situated in the Southern District. Section 1391(b)(3) does not apply because the action could be brought in the Southern District.

Mr. Berry offers the feeble excuse that, "if any party requested that it [the case] be transferred to the Southern District, such a transfer would likely be the right outcome and could not be properly opposed, given the related *Phillips* case," and that he "promptly agreed" to the transfer "after Dorsey informally requested that the case be transferred to the Southern District."

Berry Dec., ¶ 38. While misleading, Mr. Berry's statement effectively acknowledges that he improperly filed the action in the Eastern District. In his declaration Mr. Berry did not reference or provide his email correspondence of July 18, 2017 to Dorsey attorney Peter Lancaster in response to Dorsey's stated intent to request a transfer to the Southern District based on the Local Rule and the venue statute, Akerman Supp. Dec., ¶ 5, Ex. R. While Mr. Berry's email contained excuses for filing the complaint in the Eastern District, as to the request for transfer, he wrote:

> You also mention that you were considering a motion to transfer the case to the Southern District, to have it designated as related to, or possibly consolidated with, the *Phillips* case. Please forward me that proposal as promptly as possible, and I will let you know what our position is.

*Id.* Mr. Berry's statement in this email, which reflected a need for time to respond to the request for transfer (at least nearly 24 hours after it was first raised by Mr. Lancaster), Berry Dec., Ex. 4, is inconsistent with a prior premediated decision to promptly agree to such a transfer. The inescapable inference is that Mr. Berry had no choice but to dismiss the action and file it in the Southern District because he knew that any continued effort to maintain the action improperly in the Eastern District could not be justified under the Local Rule or the venue statute.

**B.    Plaintiffs Ignore the Law Interpreting *Kay* Entitling Dorsey to Its Attorneys' Fees under 42 U.S.C. § 1988**

Plaintiffs claim that Dorsey is not entitled to attorneys' fees because it is represented by members of its own firm and one of the members representing the firm is also named as a defendant in this case. In advancing this claim, Plaintiffs misstate the rule of *Fontanillas-Lopez v. Morell Bauza Caragena & Dapena, LLC*, 825 F.3d 50, 61 (1st Cir. 2016) and district court cases in the Second Circuit. *Fontanillas-Lopez*, 832 F.3d at 61, awarded the defendant law firm its own attorneys' fees, relying on a footnote in *Kay v. Ehrler*, 499 U.S. 432, 492 n.7 (1991) for

6

the proposition that "an organization is not comparable to a pro se [individual] litigant because the organization is always represented by counsel, whether in-house or pro bono, and thus, there is always an attorney-client relationship." While the Plaintiffs assert that only "several circuits have hold (sic.) that law firms represented by their own attorneys may sometimes recover fees," Br. 23, the First Circuit in fact recognized that "every circuit we know to have considered the issue has determined that *Kay* does not prohibit the award of fees to an attorney who represents his or her own law firm." *Fontanillas-Lopez* at 61. Moreover, the Plaintiffs cite no authority for their unsupported assertion that "most of these Circuits require a factual inquiry into whether the attorneys representing the firm have a reasonable distance from the allegations at issue." Br. 23.

Plaintiffs incorrectly contend that "the First Circuit would not permit a firm to recover fees for work done by an attorney who was himself a defendant." Br. 23. However, in *Schneider v. Colegio de Abodgos de P.R*, 187 F.3d 30, 32 (1st Cir. 1999), the First Circuit permitted an individual to recover fees for work performed by an attorney who represented himself as well as the other plaintiff in the action. Because "the fees incurred by plaintiffs are essentially the same whether or not Schneider [the lawyer] was also a plaintiff . . . the prohibition in *Kay* against awarding attorney's fees to an attorney pro se litigant does not apply." *Id.* Similarly, here, it makes no difference which lawyer at Dorsey represented the firm since Mr. Berry made clear to Esposito in an email on July 1, 2017 that Mr. Akerman "is the bad guy and Dorsey is the deep pocket." Akerman Supp. Dec., ¶ 6, Ex. S. As the concurring opinion pointed out in *Schneider*, "The attorney-client relationship imposed an ethical obligation on Schneider to consider the interest of his client at all times and exercise his best professional judgment, thus satisfying the concerns under Kay's requirement of an attorney-client relationship." *Schneider* at 39-40.

Moreover, none of the cases relied upon by Plaintiffs from district courts in the Second Circuit are comparable to Dorsey's situation, in which it found itself as a defendant in a frivolous § 1983 lawsuit as part of a bludgeon to force a settlement in a dispute that has generated some ten separate litigations over the past ten years. Plaintiffs' cases relate to lawyers representing themselves in fee disputes with their clients, *Newman & Cahn, LLP v. Sharp*, 388 F.Supp.2d 115 (E.D.N.Y. 2005); *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, 2014 U.S. Dist. LEXIS 22168 (S.D.N.Y. Feb. 20, 2014), a parent lawyer representing his child, *S.N. v. Pittsford Cent. School Dist.*, 2005 U.S. Dist. LEXIS 42745 (W.D.N.Y. Mar. 9, 2005), and a lawyer representing himself in a personal dispute unrelated to his law firm, *Menton v. Experian Corp.*, 2003 U.S. Dist. LEXIS 12457 (S.D.N.Y. July 21, 2003).

Finally, Plaintiffs complain that, "it appears defendants are seeking compensation relating to the pendent state law claims." Berry Dec., ¶ 39. However, this is one of those cases recognized by the Supreme Court where the Plaintiffs' "claims for relief . . . involve a common core of facts," and where "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Echerhart*, 461 U.S. 424, 435 (1983). Thus, "[s]uch a lawsuit cannot be viewed as a series of discrete claims," but "[i]nstead the district court should focus on the significance of the overall relief obtained by the [defendant] in relation to the hours reasonably expended on the litigation." *Id.* Here, all the state law claims related to the precise same facts underlying the conspiracy claim.

C. **Plaintiffs Vexatiously Multiplied the Proceedings Entitling Dorsey to Its Attorneys' Fees under 28 U.S.C. § 1927**

Plaintiffs claim that Dorsey is not entitled to attorneys' fees under 28 U.S.C. § 1927 because counsel did not multiply proceedings as required by the statute. Plaintiffs' counsel

8

focuses solely on a complaint filed in the Eastern District that was dismissed and filed again in the Southern District. This situation is not in any way anyway comparable to *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999), relied upon by the Plaintiffs, in which the court held that the "filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously." This is not a single complaint case. Rather, this case is like *Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232, 248 (S.D.N.Y. 2016), in which this Court awarded attorneys' fees under § 1927 where counsel filed ten lawsuits in the Eastern District of Texas against ten different defendants relating to the same patent, of which one was later transferred to this Court. Here, Plaintiffs filed their initial suit in 2009 over the same property that is the subject of this lawsuit. Plaintiffs' counsel has since filed approximately ten additional separate lawsuits relating to this property in state and federal court.[3] When Plaintiffs' counsel failed to obtain a judgment against Mr. Sanford, he admittedly switched strategies to suing any lawyer who represented Mr. Sanford. In addition, Mr. Berry has multiplied the proceedings by suing in federal court when he should have, as this Court found, pursued remedies under state law. *Knopf* at *16 ("they [the Knopfs] were free to take any further steps that state court procedures allowed"). Finally, he multiplied the proceedings in this case by filing this case in the Eastern District to avoid having to appear before this Court. Indeed, he could not in his initial complaint or in his affidavit "identify a single piece of evidence located in or near the Eastern District of" New York. *Gust, Inc.*, 226 F.Supp. 3d at 250. In sum, as

---

[3] In addition to the complaint filed in the E.D.N.Y. and the second complaint filed in the S.D.N.Y., these additional cases include *Knopf v. Sanford*, Index No. 113227/2009, in New York County; *Knopf v. Sanford*, Index No. 15074/11 in Nassau County; *Knopf v. Meister Seelig & Fein, LLP and Pursuit Holdings, LLC*, 15 cv 5090 (DLC); *Berry v. Dechert*, Index No. 152360/16 in New York County; *Knopf v. Dechert*, 16 cv 2044 (S.D.N.Y.); *Knopf v. Sanford, Pursuit and Phillips*, 16 cv 6601 (DLC); and *Knopf v. Dechert and Pursuit*, Index No. 157098/16, in New York County. This Court took judicial notice of certain of these lawsuits in so far as they related to the issues in Defendants' motions to dismiss. *Knopf* at *2-4.

demonstrated above, Mr. Berry multiplied the "proceedings" relating to the same property "unreasonably and vexatiously" and should be required to reimburse Dorsey for its fees in defending this case.

### III. CONCLUSION

For the reasons stated above, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927, this Court should award Dorsey its attorneys' fees for its defense of this action and this motion. In the alternative, this Court should exercise its discretion and award sanctions pursuant to its inherent power to sanction litigation misconduct. *See Chambers v. NADSCO, Inc.*, 501 U.S. 32, 50-51 (1991). Plaintiffs' counsel apparently needs a stronger message than even that conveyed by this Court's prior orders that suing an adversary's attorneys to add pressure on the adversary is an inappropriate litigation tactic.

Dated: January 19, 2018

                                              DORSEY & WHITNEY LLP

By:    */s/ Nathaniel H. Akerman*
       Nathaniel H. Akerman
       Krista E. Bolles
       51 West 52nd Street
       New York, New York 10019
       Telephone: (212) 415-9200

       ~and~

       Peter M. Lancaster
       50 South Sixth Street
       Suite 1500
       Minneapolis, MN 55402
       *To be admitted pro hac vice*

       *Attorneys for Defendants*
       *Dorsey & Whitney LLP and*
       *Nathaniel H. Akerman*