UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
NORMA KNOPF and MICHAEL KNOPF,      :
                                    :
                    Plaintiffs,     :
          -v-                       :          17cv5833(DLC)
                                    :
FRANK M. ESPOSITO, DORSEY & WHITNEY,:          OPINION &
LLP, NATHANIEL H. AKERMAN, EDWARD S.:            ORDER
FELDMAN, and MICHAEL HAYDEN SANFORD,:
                                    :
                    Defendants.     :
                                    :
------------------------------------X

APPEARANCES

For the Plaintiffs:
Eric W. Berry
Berry Law PLLC
745 Fifth Avenue, 5th Floor
New York, NY 10151

Gary Greenberg
666 Fifth Avenue, 27th Floor
New York, NY 10103

For Defendant Frank M. Esposito:
Frank M. Esposito
Esposito, PLLC
275 Madison Avenue, 14th Floor
New York, NY 10016

For Defendants Dorsey & Whitney, LLP, and Nathaniel H. Akerman:
Nathaniel H. Akerman
Amanda Prentice
Krista E. Bolles
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019

Peter M. Lancaster
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402

For Defendant Edward S. Feldman:
Edward S. Feldman
570 Grand Avenue
Englewood, NJ 07631

DENISE COTE, District Judge:

On December 7, 2017, the Court granted motions to dismiss filed by the defendants Frank M. Esposito, Dorsey & Whitney, LLP ("Dorsey"), Nathaniel H. Akerman, Edward S. Feldman, and Michael Hayden Sanford. Esposito, Dorsey, Akerman, and Feldman have now moved for attorney's fees and sanctions against plaintiffs Michael and Norma Knopf (the "Knopfs") and their attorneys Eric W. Berry, Gary Greenberg, and Joseph N. Paykin. For the reasons below, the motions are denied to the extent they seek imposition of sanctions against Greenberg or Paykin. Dorsey's motion is otherwise granted, Esposito's motion is granted in part, and the motions by Akerman and Feldman are denied.

## Background

This action is one of four filed in federal court by the Knopfs. The federal actions are related to a state court action the Knopfs filed in 2009 (the "State Court Action"). Broadly, the State Court Action arises out of two 2006 loans the Knopfs made to Pursuit Holdings, LLC ("Pursuit"), a company controlled by Sanford, for the purchase of New York City properties (the "Properties"). In the State Court Action, the Knopfs sued

Sanford and Pursuit for breach of contract, alleging that
Pursuit and Sanford violated their agreement to grant the Knopfs
mortgages on the Properties, and sought to have a constructive
trust imposed on Pursuit's interest in the Properties.  By
orders issued in July, October, and November 2015, the Appellate
Division denied the Knopfs' attempts to restrain the sale of one
of the Properties ("PHC").  In February 2016, Pursuit sold PHC
to a third party, Michael Phillips ("Phillips").  In June 2016,
before the most recent federal actions were filed, the Appellate
Division denied the Knopfs' motion that sought, inter alia,
contempt sanctions against Sanford on the theory that the sale
of PHC violated a temporary restraining order issued by a
Justice of the Appellate Division.  That order explained that as
of November 2015 there were no longer any court-ordered
encumbrances on the sale of PHC.  The Knopfs obtained summary
judgment on their breach of contract claims against Pursuit and
Sanford in the State Court Action in December 2014, see Knopf v.
Sanford, 123 A.D.3d 521 (1st Dep't 2014), but they have not yet
obtained a final judgment in the State Court Action.

    The Knopfs filed the first of the related federal actions
on July 1, 2015, against Meister, Seelig & Fein, LLP ("MSF") and
Pursuit (the "MSF Action").  MSF had represented Pursuit in the
State Court Action and had been successful in opposing
restraints on the sale of PHC.  To secure payment to MSF for its

services, Pursuit executed a mortgage on PHC in favor of MSF.
In the MSF Action, the Knopfs alleged that the mortgage on PHC
in favor of MSF constituted an actual and constructive
fraudulent conveyance.  On March 22, 2016, the Court dismissed
the actual fraudulent conveyance claim on the pleadings.  Knopf
v. Meister, Seelig & Fein, LLP, No. 15cv5090(DLC), 2016 WL
1166368 (S.D.N.Y. Mar. 22, 2016).  On April 21, 2017, the Court
granted summary judgment to MSF on the constructive fraudulent
conveyance claim.  Knopf v. Meister, Seelig & Fein, LLP, No.
15cv5090(DLC), 2017 WL 1449511 (S.D.N.Y. Apr. 21, 2017).
Pursuit defaulted because no attorney entered an appearance on
its behalf, but the default was vacated in light of the
dismissal of all of the Knopfs' claims.  The Knopfs appealed on
May 11, 2017.

     The Knopfs filed their second federal lawsuit on August 22,
2016, against Pursuit and Phillips (the "Phillips Action").
Phillips had purchased PHC from Pursuit in an arms-length
transaction.  Sanford appeared at an initial conference for the
case and was thereafter added at his request as a defendant.  In
the Phillips Action, the Knopfs sued Pursuit and Phillips for
actual and constructive fraudulent conveyance in the sale of
PHC, sued Phillips for tortious interference with contract,
sought a constructive trust on Sanford's interest in Pursuit,
and sued Sanford for breach of fiduciary duty and as an alter

4

ego of Pursuit.  Pursuit also defaulted in this action.  On December 12, 2016, the Court dismissed the tortious interference with contract claim.  See Knopf v. Phillips, No. 16cv6601(DLC), 2016 WL 7192102 (S.D.N.Y. Dec. 12, 2016).  On December 22, 2017, the Court granted summary judgment to Phillips on the constructive and actual fraudulent conveyance claims.  See Knopf v. Phillips, No. 16cv6601(DLC), 2017 WL 6561163 (S.D.N.Y. Dec. 22, 2017).  Finally, on February 1, 2018, the Court dismissed the remaining claims against Sanford and vacated Pursuit's default in light of the Knopfs having substantially changed the theories underlying their claims in their pretrial materials, and due to significant overlap between the Knopfs' new theories and the claims advanced in the State Court Action.

The present action is the fourth federal action (the "Esposito Action").  Originally, the Knopfs filed this suit in the Eastern District of New York on July 10, 2017.  The Knopfs voluntarily dismissed the Eastern District lawsuit on July 28, and filed a substantially similar complaint in this Court on August 2, 2017.  After Esposito filed a motion to dismiss the complaint on August 12, the Knopfs filed a First Amended Complaint ("FAC") on September 2.

In the Esposito Action, the Knopfs sued Sanford and three sets of attorneys who had represented Sanford or entities with which he is associated.  Defendant Feldman had been retained by

Pursuit to assist in the sale of PHC.  Defendant Akerman is a partner at defendant Dorsey.  Akerman, with Feldman, made a telephone call in January of 2016 to investigate the status of state court restraints on the sale of PHC.  Esposito had been hired by MH Sanford & Co., LLC to act as its general counsel, but did not represent anyone in connection with the sale of PHC.  The Knopfs alleged a conspiracy by Sanford and the three attorneys to violate the Knopfs' civil rights, as well as several state law fraud and tortious interference claims, all in connection with the sale of PHC.

The principal basis for the Esposito Action was the January 2016 telephone call that Akerman and Feldman placed to a state court employee.  Unbeknownst to them, this employee was married to Esposito.  The court employee told the lawyers that the Appellate Division's November 2015 order vacated all prior restraints on the sale of PHC.  The Knopfs alleged that this communication constituted an ex parte advisory opinion that violated their due process rights.  The Court granted the defendants' motion to dismiss the federal claim on December 7, 2017, holding that the January 12, 2016 call did no more than explain the effect of the Appellate Division's orders.  See Knopf v. Esposito, No. 17cv5833, 2017 WL 6210851, at *6-*7 (S.D.N.Y. Dec. 7, 2017).  To the extent the Knopfs were unhappy with orders issued by New York state courts, then that court

6

system provided them with "ample avenues of redress." Id. at
*7.  The Court additionally held that the Knopfs failed to
plausibly allege any conspiratorial agreement between the court
employee and the defendants.  See id.  Finally, the Court
declined to exercise supplemental jurisdiction over the state
law claims.  The Knopfs appealed on December 28, 2017.

     Throughout the state and federal litigation, the Knopfs
have been represented by Eric W. Berry.  His conduct is at the
heart of these motions for sanctions.  Berry has several times
stated to attorneys representing Sanford or Pursuit that he
"sues all of Sanford's lawyers."  Berry also caused a deposition
subpoena to be served at 6:30 a.m. at Esposito's private
residence despite having Esposito's business address.

     In addition, the amended complaint in the Esposito Action
added unfounded allegations of bribery against Esposito and his
wife, the New York state court employee who participated in the
January 2016 telephone call described above.  Berry again
accused Esposito of bribery in an October 26, 2017 letter, which
Berry also sent to Esposito's wife.  In November 2017, Berry
reiterated the bribery allegation in a message to Esposito and
indicated that he planned to "disclose[]" the "bribery stuff
. . . into the [S]econd [D]epartment."  In response to
Esposito's communication seeking to settle the matter, Berry
made reference to the possibility of articles being written

7

about the case, stated "Who cares who wins or loses?" and "There is no way your career survives this."  Later, in response to Esposito sending Berry a letter requesting that a subpoena for Esposito to testify be withdrawn, Berry wrote "No.  You either show, or we begin proceedings to have you[] arrested . . . ."

Berry also falsely represented during Sanford's deposition that he was not recording a video of that deposition.  The deposition transcript reads as follows:

Sanford:  . . . <u>Are you videotaping</u> me right now?

Berry:  <u>I'm texting</u> Gary Greenberg.  He's my co-counsel.  Sorry.  I'll move it down here.

[Lorraine] Nadel [attorney for Phillips in the Phillips Action]:  Is it your statement on the record that you're not videotaping him?

Berry:  <u>No, of course not</u>.  If I had wanted to videotape, I would have had a videographer.

Sanford:  You would have had to notice me for that.

Nadel:  If you videotaped him, I ask that you delete it now.

Berry:  <u>I didn't videotape him</u>.  I told you <u>I was texting</u> Gary Greenberg, my co-counsel.

Nadel:  I just ask that you delete it.

Sanford:  I also ask that you put on the record that you did not videotape him.

Berry:  <u>I did not videotape him</u>.

(Emphasis supplied.)  Despite Berry's repeated representations, Berry had videotaped the deposition.  Berry later emailed a

video recording of Sanford's deposition testimony to Esposito. The accompanying message stated, "watch the whole thing, your name is mentioned at the end. [B]ut that is just the tip of the iceberg[.]" Notably, Berry does not dispute these allegations. Thus, despite stating five times on the record of a deposition that he was not recording Sanford, Berry did in fact record Sanford and sent that recording to Esposito in order to threaten him with reputational harm.

In the Esposito Action, Esposito, Akerman, Feldman, and Sanford proceeded pro se, and Dorsey was represented by Akerman and other attorneys employed by Dorsey. Akerman moved for attorney's fees on his behalf and on behalf of Dorsey on December 26. Feldman moved for attorney's fees on his own behalf the same day, and Esposito moved for attorney's fees and sanctions on December 27. These motions became fully submitted January 19, 2018.


## Discussion

The parties move for fees and sanctions on several theories. Akerman seeks fees on his own behalf and on behalf of Dorsey under 42 U.S.C. § 1988 ("Section 1988") and 28 U.S.C. § 1927 ("Section 1927"). Feldman seeks fees under Section 1988, Section 1927, and Rule 11, Fed. R. Civ. P. Esposito seeks fees under Section 1988, Section 1927, Rule 11, Fed. R. Civ. P., and

9

a court's inherent power to sanction bad faith or vexatious conduct.

I. Rule 11

No party in this proceeding complied with the strict procedural requirements of Rule 11.  See Fed. R. Civ. P. 11(c). To the extent the parties invite the Court to sanction the Knopfs sua sponte, it declines to do so.  Accordingly, the motions are denied insofar as they seek Rule 11 sanctions.

II. Eligibility for Fees Under Sections 1927 and 1988

All of the movants seek fees under Sections 1927 and 1988. The Knopfs oppose these requests on the grounds that Akerman, Feldman, and Esposito are pro se attorney-parties not eligible to be awarded attorney's fees.  The Knopfs also argue that a law firm such as Dorsey that is represented by its own attorney may not receive fees under these statutes where that attorney is also a party.

In the context of fees under Section 1988, the Supreme Court has explained that "an attorney-client relationship [is] the predicate for an award under § 1988," because that statute's "specific purpose was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights."  Kay v. Ehrler, 499 U.S. 432, 436 (1991).  This rule applies regardless of whether the pro se litigant is an attorney.  See id. at 438.

10

Although the Second Circuit has not addressed this issue specifically as applied to Section 1927, it has done so in other statutory contexts such as suits against the IRS and suits brought under the federal special education statutes. See, e.g., U.S. Dep't of Justice, Tax Div. v. Hudson, 626 F.3d 36, 38 (2d Cir. 2010) (IRS suits); S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist., 448 F.3d 601, 604 (2d Cir. 2006) (special education suits). In Hudson, the Second Circuit noted that the relevant statute, I.R.C. § 7430, provides that a prevailing party is entitled to collect "reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding." 626 F.3d at 38 (emphasis in Hudson). Because the pro se attorney-litigant had not paid any attorney, the Court concluded that he could only recover fees if "he may be said to have incurred attorney's fees by virtue of the time he invested litigating the tax issue." Id. The Court held that the individual pro se litigant, although an attorney, could not, for two reasons. First, a "fee" is a "charge for labor or services," while the individual at most "brought on himself an expenditure of time." Id. (citation omitted). Second, an attorney is a person who acts as a "legal agent," and agent means "representative," while the individual could not have "acted as an agent for himself." Id. (citation omitted).

This rationale applies equally to Section 1927. That statute provides for the recovery of "costs, expenses, and attorneys' _fees_ reasonably _incurred_" in certain situations. 28 U.S.C. § 1927 (emphasis added). As in Hudson, Akerman, Esposito, and Feldman have not incurred any fees by representing themselves. As a result, none may recover under Section 1927 for the work they did representing themselves in this proceeding.

Dorsey, however, may recover fees. The Knopfs assert that the rationale underlying Kay should also bar Dorsey from recovering attorney's fees, because it was represented by an attorney who is also a member of the firm. Not so. In Kay, the Supreme Court distinguished between pro se attorney litigants and organizations as follows: "an organization is not comparable to a pro se litigant because the organization is always represented by counsel, whether in-house or pro bono, and thus, there is always an attorney-client relationship." 499 U.S. at 436 n.7.

The First Circuit has addressed a scenario analogous to the one presented here, where an individual pro se plaintiff also represented another individual plaintiff. See Schneider v. Colegio de Abogados de Puerto Rico, 187 F.3d 30 (1st Cir. 1999). The court held that the attorney-plaintiff could recover all relevant fees, even though the attorney-plaintiff also

represented himself, because "the fees incurred by plaintiffs [were] essentially the same whether or not [the attorney-plaintiff] was also a plaintiff." Id. at 32. Additionally, the weight of appellate authority where a law firm is represented by its own non-party attorneys is to allow the law firm to recoup fees expended by its own lawyers. See, e.g., Treasurer, Trustees of Drury Indus., Inc. Health Care Plan & Trust v. Goding, 692 F.3d 888, 898 (8th Cir. 2012) (affirming grant of attorney's fees under ERISA to law firm represented by its own attorneys and citing cases from 4th, 5th, and D.C. Circuits).

Dorsey is eligible to recover the attorney's fees that Akerman and other Dorsey attorneys expended defending the firm in this action. The Kay footnote explaining that an "organization is always represented by counsel, whether in-house or pro bono" does not leave room to distinguish between organizations represented by non-party in-house counsel and those that are represented by in-house counsel who are also parties to the action. 499 U.S. 436 n.7.

III. Section 1927

Dorsey moves for fees under Section 1927 on the grounds that the Knopfs' counsel, Eric W. Berry,[1] multiplied proceedings

---

[1] Berry and two other attorneys who filed notices of appearance in the Esposito Action on behalf of the Knopfs, Greenberg and Paykin, filed declarations opposing the motions for fees and sanctions. The Court credits the assertions in the attorneys'

by filing this action because it is one of nearly a dozen proceedings in which Berry has represented plaintiffs suing Sanford, companies run by Sanford, and attorneys who have represented Sanford and his companies; because this case was frivolous; and because Berry acted in bad faith throughout the Esposito Action.  Berry counters that Dorsey is not entitled to an award under Section 1927 because such fees may not be awarded where an attorney files a single lawsuit, and because he has not acted to delay or multiply the proceedings in the Esposito Action.

Section 1927 provides that

[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  "[A]n award under § 1927 is proper only when there is a finding constituting or akin to bad faith."  <u>Zurich Am. Ins. Co. v. Team Tankers A.S.</u>, 811 F.3d 584, 591 (2d Cir. 2016) (citation omitted).  This requires a finding that an "attorney's actions [were] so completely without merit as to

_____

declarations that Paykin and Greenberg played a very minor role in the Esposito Action and that Berry was the "driving force" in the litigation.  The movants additionally direct most of their arguments to Berry's individual conduct.  As a result, the motions for fees and sanctions are denied to the extent they seek relief from Greenberg or Paykin.

require the conclusion that they must have been undertaken for some improper purpose such as delay." 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 264 (2d Cir. 2015) (citation omitted). Section 1927 specifically authorizes the imposition of attorneys' fees against an attorney. See id.

The Fifth Circuit has observed that Section 1927 allows fees to be shifted if the fees were "associated with the persistent prosecution of a meritless claim." Procter & Gamble Co. v. Amway Corp., 280 F.3d 519, 525 (5th Cir. 2002) (citation omitted). Similarly, the Seventh Circuit has held that attorneys vexatiously multiplied proceedings within the meaning of Section 1927 where they "filed a frivolous suit in a New York court in order to complicate [an] already far too complicated and absurdly protracted litigation." IDS Life Ins. Co. v. Royal Alliance Assocs., Inc., 266 F.3d 645, 654 (7th Cir. 2001). In that case, the court relied on "[t]he defendants' choice of forum, the ground, and the timing" as evidence of their bad faith in filing the second action. Id.

Berry's filing of this action in the Eastern District of New York, and his refiling in this Court were done in bad faith. In light of the other federal actions against Sanford, Pursuit, and individuals associated with them, of the long-running State Court Action also against Sanford and Pursuit, and of the frivolous federal claim in this action, the Court finds that the

15

Esposito Action was filed to unreasonably and vexatiously multiply proceedings against Sanford and his former lawyers such that fees under Section 1927 are warranted. Other courts have granted sanctions under Section 1927 where a party has filed a lawsuit that is related to other court proceedings in a different venue, where it appears that the separate suit was brought in bad faith solely to add to the burden of ongoing litigation. See IDS Life Ins. Co., 266 F.3d at 654. That is the case here. This action is yet another attempt by Berry to "persistent[ly] prosecut[e]" meritless claims against Sanford. Procter & Gamble Co., 280 F.3d at 525 (citation omitted).

The inference of bad faith is reinforced by the fact that the civil rights conspiracy claim in the Esposito Action was frivolous. The injury the Knopfs asserted was based on duly issued orders of the New York state courts. To the extent there could have been any confusion about the meaning of the state court decisions issued in 2015 -- decisions issued before the January 2016 telephone call was placed by Feldman and Akerman -- that vanished after the Appellate Division issued its June 2016 order explaining that there were no restraints on the sale of PHC after the November 2015 order. And it is particularly troubling that Berry's filing of the FAC in the Esposito Action appears to have been motivated by a desire to include spurious allegations of bribery against Esposito and his wife.

By suing attorneys with the most tenuous connection to the sale of PHC and without a good faith basis to bring a cause of action against them, and by his threats to and harassment of counsel, Berry has sought to isolate Sanford and deprive him of the assistance of counsel.  Berry's conduct has crossed the line from aggressive advocacy into harassment.  Berry's pattern of threats against the defendants underscores his bad faith, as do his lies.  As described above, Berry videotaped Sanford during his deposition, without authorization or consent, and then lied several times about doing so.

This conduct constitutes bad faith and is sanctionable under Section 1927.  As a result, Berry is individually liable under Section 1927 for the fees incurred by Dorsey.

IV. Section 1988

Dorsey additionally moves as the prevailing party for fees against the Knopfs under Section 1988 on the ground that the Section 1983 claim filed against it was frivolous and brought in bad faith.  The Knopfs counter that they had colorable arguments in support of their conspiracy claim.

In an action brought under 42 U.S.C. § 1983 ("Section 1983"), a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 1988(b). A prevailing defendant in a Section 1983 action, however, is entitled to such fees only if the plaintiff's claim "was

frivolous, unreasonable, or groundless." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978); see also CRST Van Expedited, Inc. v. EEOC, 136 S. Ct. 1642, 1651 (2016) (holding that a defendant prevails "whenever the plaintiff's challenge is rebuffed, regardless of the precise reason for the court's decision"); Fox v. Vice, 563 U.S. 826, 834 (2011). Section 1988 "does not mention an award against the losing party's attorney, [so] the appropriate inference is that an award against attorneys is not authorized." Crescent Publ'g Grp. v. Playboy Enter., Inc., 246 F.3d 142, 150 (2d Cir. 2001) (citation omitted).

It is not disputed that Dorsey is a prevailing party. Moreover, the claim that Dorsey and/or its partner Akerman conspired to violate their due process rights was frivolous. Orders of the Appellate Division in 2015 denied the Knopfs' request to restrain the sale of PHC. See Knopf v. Esposito, No. 17cv5833(DLC), 2017 WL 6210851, at *2 (S.D.N.Y. Dec. 7, 2017). That this was the case was further clarified by the Appellate Division's June 2016 order, which specifically states that there were no encumbrances on the sale of PHC after November 2015. Because of the clarity of the Appellate Division's ruling in June 2016, there was no colorable basis for the Knopfs to claim in the Esposito Action they filed in August 2016 that Akerman's

18

January 2016 telephone call did anything other than confirm the
procedural posture of the State Court Action.

Second, the Knopfs' conspiracy claim was groundless because
it failed to allege the elements of conspiracy.  The FAC does
not plausibly allege a conspiratorial agreement between Akerman
and the state court employee who answered the call.  Nor does
the FAC allege that Akerman knew that an attorney for a Sanford
enterprise -- Esposito -- was married to a court employee, much
less the court employee with whom he spoke.  Lastly, neither
Akerman nor Feldman, with whom Akerman placed the call,
controlled to whom their call was routed.

For these reasons, the Section 1983 claim asserted against
Dorsey in the FAC was baseless to the point of frivolousness.
Dorsey is accordingly entitled to recover its attorney's fees
from the Knopfs.  In light of the prior finding of Berry's
liability, the Knopfs and Berry shall be jointly and severally
liable for Dorsey's fees.

V. Amount of Dorsey's Fees

Dorsey has submitted documentation of its fees, but seeks
the amount of $177,857.50, reflecting a roughly 22% reduction
from its total fees.  Although plaintiffs raise a number of
objections to the legal basis for awarding Dorsey fees, their

moving papers do not contest the amount of fees.[2]  The Court

finds that $177,857.50 is a reasonable amount of fees to award

Dorsey in light of the substantial discount and the records

Dorsey submitted.  An award of all of Dorsey's fees is warranted

in this case because the Esposito Action was patently frivolous

from the moment its predecessor was filed in the Eastern

District of New York.  Because Dorsey is entitled to fees under

both Sections 1927 and 1988, Berry and the Knopfs shall be

jointly and severally liable to it in the amount of $177,857.50.

VI. Sanctions Pursuant to the Court's Inherent Powers

Esposito moves for sanctions against Berry and the Knopfs

under a court's inherent powers.  Plaintiffs contend that

Esposito is not entitled to sanctions because they have not

engaged in bad faith conduct and because their claim against

Esposito was not frivolous.

Sanctions under a court's inherent powers may be

appropriate where "a party has acted in bad faith, vexatiously,

---

[2] In his affidavit opposing the motions for fees and sanctions,
Berry requests an evidentiary hearing to determine the amount of
fees or sanctions.  He states that awarding fees or sanctions
without giving him the ability to cross-examine the movants
regarding the amount of fees would violate his due process
rights.  This request is denied.  Berry was given notice and an
opportunity to respond to the motions, each of which included
evidentiary support for the amounts sought.  Berry has not
raised any issue of fact regarding the amounts requested, so he
is not entitled to a hearing on the amount of fees.  See
Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 335 (2d
Cir. 1999).

wantonly, or for oppressive reasons." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991) (citation omitted).  Such sanctions must be supported by "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." <u>Wilson v. Citigroup, N.A.</u>, 702 F.3d 720, 724 (2d Cir. 2012) (citation omitted).  "[A]n award made under the court's inherent power may be made against an attorney, a party, or both." <u>Enmon v. Prospect Capital Corp.</u>, 675 F.3d 138, 144 (2d Cir. 2012) (citation omitted).

Esposito has shown that Berry should be sanctioned individually, for largely the same reasons that Dorsey is entitled to fees from Berry under Section 1927, namely Berry's bad faith, harassing conduct throughout this litigation. Esposito was personally the target of a number of Berry's improper threats of reputational harm.  For instance, Berry sent to Esposito, along with a threat of reputational harm, the video Berry illicitly took of Sanford's deposition.  Esposito was personally targeted by the unsupported bribery allegations in the FAC, which Berry stated in an email he wished to disseminate in multiple courts.  Further, Berry sent a letter to Esposito's wife accusing Esposito of bribery.  These actions, especially in light of Berry's statement "Who cares who wins or loses?", strongly imply that Berry's sole purpose in adding Esposito to

the Esposito Action was to harass Esposito, to deter other attorneys from representing Sanford, and to extract settlements from parties cowed by his inflammatory accusations. Finally, the findings that the conspiracy claim asserted in the FAC was frivolous apply equally to the analysis of sanctions under a court's inherent powers.

Esposito seeks $135,200. Esposito, who represented himself, calculated what he would have billed as an attorney in this action. The Court awards Esposito $20,000 against Berry individually. This sanction will not begin to compensate Esposito for the time he devoted to this case. It is principally intended, however, to deter wrongful behavior like that exhibited by Berry and as a statement of the importance of respect for the law and an attorney's ethical obligations in litigation. See Chambers, 501 U.S. at 43-44; Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66 (1980). In light of the other penalties awarded in this opinion, an additional award of $20,000 payable to Esposito, is sufficient and appropriate.

## Conclusion

Feldman's December 26, 2017 motion for attorney's fees is denied. Akerman's December 26 motion for attorney's fees is denied. Dorsey's December 26 motion for fees is granted in the amount of $177,857.50, jointly and severally against Berry and

the Knopfs, insofar as it seeks fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927. Esposito's December 27 motion for attorney's fees and sanctions is granted in the amount of $20,000, against Berry individually, under the Court's inherent power.

Dated:    New York, New York
          March 5, 2018

                              _____
                                      DENISE COTE
                              United States District Judge