```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
NORMA KNOPF and MICHAEL KNOPF,          :
                                        :
                         Plaintiffs,    :
            -v-                         :   17cv5833(DLC)
                                        :
FRANK M. ESPOSITO, DORSEY & WHITNEY     :   OPINION & ORDER
LLP, NATHANIEL H. AKERMAN, EDWARD S.    :
FELDMAN, and MICHAEL HAYDEN SANFORD,    :
                                        :
                         Defendants.    :
                                        :
----------------------------------------X
```

For the plaintiffs:
Eric W. Berry
Berry Law PLLC
745 Fifth Avenue, 5th Floor
New York, NY 10151

Gary Greenberg
666 Fifth Avenue, 27th Floor
New York, NY 10103

For defendant Frank M. Esposito:
Frank M. Esposito
Esposito, PLLC
275 Madison Avenue, 14th Floor
New York, NY 10016

For defendants Dorsey & Whitney LLP, and Nathaniel H. Akerman:
Nathaniel H. Akerman
Amanda M. Prentice
Dorsey & Whitney, LLP
51 West 52nd Street
New York, NY 10019

Peter M. Lancaster
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402

For defendant Edward S. Feldman:
Edward S. Feldman
570 Grand Avenue

Englewood, NJ 07631

For defendant Michael Hayden Sanford:
Michael Hayden Sanford
23 McKinley Road
Montauk, NY 11954

DENISE COTE, District Judge:

On December 7, 2017, the Court dismissed this action. In March of this year, it imposed sanctions on the plaintiffs, Michael and Norma Knopf (the "Knopfs"), and on their attorney Eric W. Berry. On May 14, the Knopfs and Berry filed a motion seeking relief under Rule 60(b), Fed. R. Civ. P. For the reasons that follow, the Rule 60(b) motion is granted in part.

**Background**

The Opinions in this action of December 7, 2017, and March 5, 2018 are incorporated by reference. See Knopf v. Esposito, No. 17cv5833(DLC), 2017 WL 6210851 (S.D.N.Y. Dec. 7, 2017) ("Motion to Dismiss Opinion"); Knopf v. Esposito, No. 17cv5833(DLC), 2018 WL 1226023 (S.D.N.Y. Mar. 5, 2018) ("Sanctions Opinion"). Only facts necessary to resolve the present motion for relief from judgment will be discussed.

This case arises out of two real estate loans made by the Knopfs to Pursuit Holdings, LLC ("Pursuit"), a company controlled by defendant Michael Hayden Sanford, in 2006 for the purchase of several properties (the "Properties") in New York

City, including an apartment on East 67th Street ("PHC"). The Knopfs filed an action in state court in 2009 (the "State Court Action") in which they claimed that Sanford and Pursuit breached the loan agreements by failing to grant the Knopfs mortgages on the Properties.

The Knopfs obtained summary judgment on their breach of contract claims against Pursuit and Sanford in the State Court Action in December 2014. See Knopf v. Sanford, 1 N.Y.S.3d 18 (1st Dep't 2014). It was not until over three years later, in February of 2018, however, that the Knopfs were granted judgment against Pursuit in the amount of $8,336,448. See Knopf v. Sanford, No. 113227/09, 2018 WL 1769299 (N.Y. Sup. Feb. 9, 2018). In the interim, four lawsuits were filed in federal court related to the Properties. This federal action alleged that the defendants, Sanford and attorneys who had represented Sanford or Pursuit in connection with the sale of PHC, had conspired to violate the Knopfs' due process rights by bribing Esposito to obtain an opinion from a Court Employee with the New York State Supreme Court Appellate Division, First Department, that allowed PHC to be sold.

The central events in the State Court Action that underlie this accusation include the following. The Knopfs obtained an order in the State Court Action (the "October 2015 Escrow Order") directing that PHC could be sold but that the proceeds

3

had "to be placed in escrow pending further court order." See Motion to Dismiss Opinion, 2017 WL 6210851, at *2. On November 12, 2015, the Appellate Division denied the Knopfs' motion for a preliminary injunction against the sale of PHC (the "November 2015 Order"). On December 29, 2015, the Appellate Division denied Pursuit and Sanford's motion to vacate the October 2015 Order ("December 2015 Order").

Meanwhile, between 2013 and 2016, Sanford had attempted to sell PHC to Michael Phillips. See Knopf v. Phillips, No. 16cv6601(DLC), 2017 WL 6561163, at *3-4 (S.D.N.Y. Dec. 22, 2017). Phillips and Sanford signed a contract for the sale of PHC in late December 2013. See id. at *3. Phillips refused to close on the sale of PHC while restraints on the sale remained in place. See id.

Sanford retained defendant attorney Frank M. Esposito and, the Knopfs allege, promised him payment in exchange for soliciting his wife, who worked for the state court system (the "Court Employee") to opine that the November 2015 Order removed restraints on the sale of PHC. See Motion to Dismiss Opinion, 2017 WL 6210851, at *2. Sanford arranged to have two of the defendants in this action, attorneys Nathaniel H. Akerman of the law firm Dorsey & Whitney LLP ("Dorsey") and Edward S. Feldman contact the Court Employee to obtain her opinion regarding the status of encumbrances on PHC. See id. at *3. Akerman had

4

previously represented Sanford in connection with related litigation filed by the Knopfs, and Feldman had been retained by Pursuit to assist in the sale of PHC. See id. at *3.

On January 12, 2016, a telephone call was placed from the law offices of Dorsey to the direct line of the Court Employee.[1] During the telephone call, Akerman and Feldman identified themselves as Sanford's attorneys and asked the Court Employee to explain the meaning of the October 2015 Escrow Order and the November 2015 Order. See id. The Court Employee explained that, after the November 2015 Order denying the Knopfs' motion for a preliminary injunction, there were no longer any encumbrances on the sale of PHC. See id.

PHC was sold on February 1, 2016, for $3 million. No proceeds were placed in escrow at that time. On March 24, the Appellate Division issued a preliminary injunction against any further dissipation of the real estate assets that Pursuit had acquired from the Knopfs. See Knopf v. Sanford, 26 N.Y.S.3d 866 (1st Dep't 2016).

On June 16, the Appellate Division denied the Knopfs' February 2016 motion for contempt sanctions against Pursuit, Sanford, and the law firm of Dechert LLP, which had represented

---

[1] As explained below, this fact was disclosed to this Court after it issued the Motion to Dismiss and Sanctions Opinions in this action.

5

Sanford and Pursuit in the State Court Action. Within hours, the Appellate Division issued a revised order that included an explanation of the denial ("Revised June 2016 Order"). The Revised June 2016 Order provides in relevant part:

> Plaintiffs-appellants seek an order of contempt against defendants and their counsel for allegedly violating a temporary restraining order issued by a single justice of this Court on October 22, 2015 (TRO);
>
> ...
>
> The motion for contempt is denied because the TRO was vacated once plaintiffs' prior motion for a preliminary injunction was denied . . . .

The Knopfs' motion for reargument and vacatur of the Revised June 2016 Order was denied in November 2017.

### **Procedural History**

The defendants' motion to dismiss this federal action was granted on December 7, 2017. See Motion to Dismiss Opinion, 2017 WL 6210851. Attorneys' fees and sanctions were granted in favor of Dorsey and Esposito, against the Knopfs and their attorney Berry, on March 5, 2018, and final judgment was entered in favor of the defendants on March 8. See Sanctions Opinion, 2018 WL 1226023. The Knopfs filed notices of appeal on December 28, 2017 and March 8, 2018.

On April 19, 2018, a representative of the New York State Unified Court System Office of Court Administration ("OCA")

6

contacted Chambers to inquire how to deliver to this Court materials reflecting an OCA investigation related to this litigation. On April 20, the Court received, ex parte, the OCA Report. Among other things, the OCA Report reveals that one of the assumptions in the Motion to Dismiss Opinion was in error. Namely, the Motion to Dismiss Opinion had assumed -- as alleged in the FAC -- that the January 12, 2016 telephone call had been placed from Dorsey to a general telephone number of the state court, after which an unidentified court employee transferred the call to the Court Employee. The OCA Report, however, identifies three telephone calls from Dorsey that were made directly to the Court Employee's work number on January 12, 2016.

This Court issued an Order on April 24, 2018, which explained that it had received the OCA Report[2] and indicated to the Court of Appeals that the Court would entertain a motion for relief from judgment pursuant to Rule 60(b), Fed. R. Civ. P. Akerman, Dorsey, and Esposito filed motions on May 3 seeking to amend the Motion to Dismiss Opinion and Sanctions Opinion to the extent of correcting the references to the January 12, 2016 telephone call, which had been described as being placed to the state court's general telephone number and transferred by an

---

[2] The complete OCA Report is filed under seal with this Court. A redacted copy is filed on the public docket.

7

unidentified court employee to the Court Employee.  The Knopfs, together with Berry, filed a motion to set aside judgment and for leave to file a SAC on May 14, 2018.  The Court of Appeals remanded the case on May 18.  A Scheduling Order of May 21 directed the defendants to respond to the Knopfs' motion, which became fully submitted on June 8.

### **Discussion**

Pursuant to Rule 60(b), Fed. R. Civ. P., "the court may relieve a party or its legal representative from a final judgment, order, or proceeding if one of several enumerated bases for relief is established."  Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 864 F.3d 172, 182 (2d Cir. 2017) (citation omitted).  The Knopfs assert that they are entitled to relief pursuant to three grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [and]
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

Fed. R. Civ. P. 60(b).

The parties do not dispute that the OCA Report constitutes newly discovered evidence within the meaning of Rule 60(b)(2).

8

They differ, however, as to whether the OCA Report reveals "fraud . . . , misrepresentation, or misconduct" by the defendants within the meaning of Rule 60(b)(3), and as to what relief, if any, should be granted. The Knopfs move to have the final judgment and sanctions award vacated, and to file a second amended complaint ("SAC"). The defendants contend that the dismissal and sanctions order should stand. For the reasons that follow, the Knopfs' Rule 60(b) motion is granted to the extent of reducing the sanctions award in favor of Dorsey and vacating the sanctions award in favor of Esposito.

I. The Motion to Dismiss Opinion and Leave to Amend

The Motion to Dismiss Opinion gave two principal grounds for dismissing the Knopfs' first amended complaint ("FAC"). First, "the gravamen of the alleged harm stems not from any conspiracy but from orders duly issued in 2015 by the Appellate Division." Motion to Dismiss Opinion, 2017 WL 6210851, at *6. Second, "there [wa]s no plausible claim [in the FAC] of any conspiratorial agreement in connection with the January 12, 2016 conversation." Id. at *7.

Only the second ground of the Motion to Dismiss Opinion is undermined by the OCA Report. That Report discloses that the January 12, 2016 call was placed from Dorsey to the Court Employee directly. This additional fact makes more plausible the existence of a conspiratorial agreement among at least some

9

of the defendants to have Esposito's wife, who is the Court Employee, offer an opinion that would permit the sale of PHC to proceed unencumbered by any court-issued restraints. But the OCA Report does not undermine the principal ground for dismissing the FAC, the fact that the Appellate Division's orders had removed any restraint on the sale of PHC. To the extent there is any ambiguity for a person unfamiliar with the procedures and terminology of the New York proceedings, the June 2016 Orders render that conclusion inescapable. Accordingly, there is no basis to vacate the Motion to Dismiss Opinion.

The Knopfs advance two principal arguments to attack the first ground of the Motion to Dismiss Opinion. First, they argue that the numbering on the Appellate Division's orders reveal that the denial of the preliminary injunction did not disturb the prior ruling ordering proceeds from the sale of PHC to be escrowed. Second, they argue that a plaintiff need not allege prejudice to state a claim of § 1983 conspiracy.

These arguments are not dependent on any new evidence, on the defendants having committed fraud, or on an excusable mistake made by the Knopfs. Accordingly, these arguments do not provide a ground to provide Rule 60(b) relief from the Motion to Dismiss Opinion. See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176-78 (2d Cir. 2004) (addressing standards for relief under Rule 60(b)(1), (2),

and (3)).

These arguments also fail on the merits. The Knopfs correctly note that the motion numbers on the Appellate Division orders are different.[3] They fail to confront, however, the fact that the Revised June 2016 Order explains that interim relief provided by a TRO -- the temporary restraining order requiring the proceeds of the sale of PHC to be escrowed -- expired when a request for a preliminary injunction was denied.

The Knopfs principally rely on In re Motors Liquidation Corp., 829 F.3d 135 (2d Cir. 2016), to support their motion. Contrary to their assertions, though, the Second Circuit expressly did not decide whether prejudice is necessary to state a claim for due process deprivations. See id. at 163. But, even if prejudice is not required to state a claim for deprivation of due process, the Knopfs have failed to show that they had a right to participate in the January 12, 2016 telephone call. The Court Employee simply gave an accurate description of duly issued court orders, specifically the effect of the November 2015 Order on the October 2015 Escrow Order. That her account was correct is confirmed by the June 2016

---

[3] The November 2015 Order is marked M-3660. The October 2015 Escrow Order and the December 2015 Order are marked M-5942. The Knopfs contend that this reveals that the November 2015 Order could not have superseded the October 2015 Escrow Order because the November 2015 Order resolved an earlier motion than the October 2015 Escrow Order.

11

Order.  The Knopfs' due process rights were not violated because they were excluded from that call.  New York state court process gave them avenues of redress from the November 2015 Order.  They had the right to seek reconsideration of the November 2015 Order, or to appeal that order.  Due process did not require their participation in an explanatory telephone call to court staff.

The Knopfs also move for leave to file a SAC, which they have submitted as an exhibit to their motion.  The SAC principally adds factual allegations derived from the OCA Report.  Leave to amend is denied for futility because the SAC does not overcome the fundamental problem with the alleged conspiracy to violate the Knopfs' due process rights, namely that the injury was caused by the November 2015 Order.  Because of the Revised June 2016 Order, it is not plausible that the January 12, 2016 telephone call altered the Knopfs' legal rights.  The SAC would accordingly fail to state a claim of conspiracy to violate the Knopfs' due process rights.

II. The Sanctions Opinion

The Knopfs move for vacatur of the Sanctions Opinion on the ground that the OCA Report reveals that this lawsuit was not frivolous, and on the ground that the OCA Report reveals that the defendants have acted inequitably.  For the following reasons, the sanctions award in favor of Dorsey is reduced to

$88,928.75, and the sanctions award in favor of Esposito is vacated.

A. Sanctions in Favor of Dorsey

Dorsey was granted $177,857.50, jointly and severally against Berry and the Knopfs, under Section 1927 and Section 1988. For the following reasons, this award is reduced to $88,928.75.

The Sanctions Opinion granted Dorsey legal fees against Berry under Section 1927 on the ground that this action was part of a pattern by Berry of prosecuting meritless claims against individuals and entities associated with Sanford solely because of that association. See 2018 WL 1226023, at *4-6. Among other things, the Sanctions Opinion explained that this action was one of four federal lawsuits brought against Sanford and his associates, and that the only federal claim in this action was frivolous because of the Revised June 2016 Order. See id. at *5. Moreover, there is uncontroverted evidence that Berry lied on the record of a deposition. See id. at *6.

The Sanctions Opinion also granted Dorsey legal fees under Section 1988 against the Knopfs because Dorsey was a prevailing party and because this action was frivolous when it was filed. See id. at *6. The principal basis for this conclusion was that "there was no colorable basis for the Knopfs to claim in [this a]ction they filed in August 2016 that [the] January 2016

13

telephone call did anything other than confirm the procedural posture of the State Court Action." Id.

The OCA Report shows that one ground given for finding this lawsuit frivolous was reached in error. The Sanctions Opinion assumed that there was no plausible link between the Court Employee and any alleged conspiracy, based on the allegation in the FAC, confirmed in a deposition by Akerman, that Akerman had called a general court number and been, in essence, randomly transferred to the Court Employee. The OCA Report indicates that Akerman's testimony to that effect was wrong and Akerman no longer asserts that he reached the Court Employee by calling a general court number. He admits he was mistaken. To this day, Akerman does not remember obtaining the Court Employee's direct number. He asserts that he never met Esposito before the Knopfs filed the instant action, has never spoken to the Court Employee other than on January 12, 2016, and did not know at the time of the call that she was married to a lawyer who represented Sanford.

Despite the error in the Sanctions Opinion, Dorsey is still entitled to a portion of its fees, awarded jointly and severally against Berry and the Knopfs, respectively, under Section 1927 and Section 1988. The OCA Report does not undermine the conclusion that this action was frivolous at the time it was filed. Before this action was filed, the Revised June 2016

14

Order had made clear that there were no restraints on the sale of PHC after the November 2015 Order. But, in light of the fact that one of the two grounds for finding the suit frivolous was revealed to be in error, the Court finds it appropriate to award Dorsey one-half of the fees it has requested.

The equities support the imposition of fees against Berry individually and against the Knopfs in this action. Berry has repeatedly acted in bad faith throughout this litigation. Berry falsely stated five times during Sanford's deposition that he was not recording that deposition, but later emailed a video recording of Sanford's deposition to Esposito in order to threaten him. See id. at *3. And, this action was "filed to unreasonably and vexatiously multiply proceedings against Sanford and his former lawyers such that fees under Section 1927 are warranted." Id. at *5. This conduct is sanctionable under Section 1927.

Moreover, this action was part of a pattern of lawsuits apparently filed to harass associates of Sanford because of a failed real estate investment deal between the Knopfs and Sanford. As a result, the Knopfs' motion to vacate the sanctions award in favor of Dorsey is granted solely to the extent of reducing the sanctions to $88,928.75, for which Berry and the Knopfs shall be jointly and severally liable.

B. Sanctions in Favor of Esposito

The Sanctions Opinion granted Esposito $20,000 against Berry individually under the Court's inherent powers. See 2018 WL 1226023, at *7. The Sanctions Opinion noted that Berry targeted Esposito and his wife with threats, including by sending Esposito a recording that Berry illicitly took of Sanford's deposition. See id. The Sanctions Opinion concluded that "Berry's sole purpose in adding Esposito to th[is action] was to harass Esposito, to deter other attorneys from representing Sanford, and to extract settlements from parties cowed by his inflammatory accusations." Id.

A court must exercise its inherent power to sanction improper conduct by litigants or attorneys "with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). Further, "a court considering sanctions can and should consider the equities involved before rendering a decision." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999).

Berry and the Knopfs do not attempt to dispute that Berry engaged in extensive bad faith conduct throughout this litigation. The OCA Report, however, discloses that Esposito and his wife had discussed the State Court Action before she received the January 12, 2016 telephone call, that she violated state court procedures in responding to the questions posed by

the attorneys in that call, and that she did not promptly
disclose the call to anyone in the Appellate Division, as she
should have done.  When later interviewed about the call, she
did not immediately disclose Esposito's involvement in the
matter.  In light of the many questions raised by the OCA Report
about Esposito's role in these events, an award of sanctions in
his favor under the Court's inherent powers is unwarranted.  The
sanctions award in favor of Esposito is vacated.

III. Sanctions Against the Defendants

The Knopfs move for sanctions against Dorsey and Akerman.
The fact remains that the Knopfs filed a groundless lawsuit.
After the June 2016 Order, there was no plausible basis for the
Knopfs to allege that the January 12, 2016 telephone call
deprived them of any rights.  In addition, the Knopfs and Berry
have not attempted to refute or even to explain the bad faith
conduct undertaken by Berry throughout this and related
litigation, as detailed in the Sanctions Opinion.  The Court
accordingly declines to exercise its discretion to award
sanctions against the defendants.

### Conclusion

The Knopfs' May 21, 2018 motion for Rule 60(b) relief is
granted solely to the extent of reducing the sanctions award in
favor of Dorsey to $88,928.75, jointly and severally against

Berry and the Knopfs, and vacating the sanctions award in favor of Esposito.  The motion is otherwise denied.

Dated:    New York, New York
          July 25, 2018

                              _____
                                    DENISE COTE
                              United States District Judge